Peak, &c., v. Gore.

CASE 93—PETITION EQUITY—SEPTEMBER 14.

## Peak, &c., v. Gore.

APPEAL FROM BOYLE CIRCUIT COURT.

1. VENDOR AND VENDEE—FRAUD.—When the purchaser of real estate has made his purchase after having time and opportunity to ascertain for himself the value of the property, and after he has in fact examined it, commendation or even false representation of its value by the vendor does not afford ground for rescission.

2. SAME—UNDISCLOSED LIENS—RESCISSION.—Ordinarily a vendee can not be prejudiced by reason of prior liens on the property purchased if for less amount than unpaid purchase money past due by him, but where a vendor who has covenanted to make "a good and legal title," upon payment of first installment of purchase money, accepts the payment of that installment and makes a deed without clearing the · property of an existing incumbrance, as his contract to make "a good and legal title" bound him to do, and without disclosing the existence of the incumbrance, the vendee, not being in default, is entitled to a rescission, if by reason of the insolvency of the vendor and the amount of the prior liens he is in danger of losing the property by enforced sale, although the unpaid installments of purchase money not yet due may amount to more than the prior liens upon the property.

ROBERT HARDING AND GEORGE DAVISON FOR APPELLANT.

The appellant is entitled to a rescission because of the false representations as to value and the concealment of the existence of incumbrances,

appellee having represented that he would make a good and clear title to said property, "free from liens and mortgages," and covenanted to " execute a good and legal title."

BRECKINRIDGE & McFERRAN for appellee GORE.

1. The false representations as to value, if any, do not afford ground for a rescission, appellant having an opportunity to know the value of the property.
2. Appellant had knowledge of the existence of the incumbrances, but even if she did not, she is indebted to appellee Gore in a sum more than double the amount of the incumbrances, and, therefore, can not complain.

JUDGE LEWIS delivered the opinion of the court.

November 18, 1887, James Gore sold to Amanda Peak and E. C. Montgomery, a lot of land in Junction City, on which was the "Gore Hotel," and furniture, for ten thousand dollars, and as evidence of the sale, a written contract was entered into and signed by the parties. By its terms Gore agreed to make to them "a good and legal title," upon payment of one-third the purchase price and execution of two notes each for one-half the residue, bearing interest at the rate of eight per cent. per annum, and payable in one and two years from the last of March, 1888, when the cash payment was to be paid and notes given. It was agreed they were to have possession of the property and it was delivered in December, 1887, but to pay rent therefor at the rate of sixty dollars per month until the cash payment was made and notes executed, and also to board Gore and his brother during the same period free of charge. March 20, 1888, Mrs. Peak sold and conveyed to Gore a tract of fifty acres of land for about three thousand seven hundred dollars, of which three thousand three hundred and thirty-three dollars and thirty-three cents

was used to make the cash payment for the hotel
property, and for the residue, Gore gave her his
promissory note that she sold, and proceeds of it
were used to buy hotel supplies.

This action was brought September 8, 1888, by
Mrs. Peak, for rescission of the contracts of sale and
purchase of the hotel property and the tract of land,
for restoration to her of the tract of land and can-
cellation of the two notes given for balance of the
ten thousand dollars. Montgomery was made de-
fendant to the action; but in his answer, made cross-
petition against Gore, the same relief was prayed
for as asked in the petition. The lower court, how-
ever, dismissed both petition and cross-petition with-
out giving any relief at all.

The evidence makes it too plain for controversy
that the hotel property for which appellants agreed
to pay ten thousand dollars, was not at the time,
nor is now worth half that sum. Indeed, only one
of nine witnesses who, having knowledge on the
subject, testify as to its value, say it was or is worth
as much as five thousand dollars, the value as fixed
by the others being from two thousand dollars to
four thousand dollars, so that in view of the fact
her son-in-law and co-purchaser, E. C. Montgomery,
is insolvent and unable to pay any part of the pur-
chase price, the bargain is a very hard one for Mrs.
Peak, who is a widow. But the relief prayed for
could not be granted for that reason alone.

It is stated in the petition, and also sworn to by
Mrs. Peak and Montgomery as witnesses, that pend-
ing negotiation about the trade and also at the time

the contract was reduced to writing, Gore, as an in-
ducement for them to purchase the property, stated
it was worth and he had been offered for it ten thou-
sand dollars, and that its earning capacity was from
twenty-five dollars to fifty dollars per day. He prac-
tically admits making the statement as to its value,
and though not as distinctly confessing he made the
other alleged statement, it is evident to us from the
manner in which his testimony is given, that he did
do so. And as Mrs. Peak had at the time no expe-
rience or knowledge in regard to the value or earning
capacity of hotel property, and Montgomery very
little if any more, it is manifest the representations
of Gore unduly influenced them to make the pur-
chase, which they both testify neither had previously
any intention to do. This, therefore, seems to us
from all the circumstances, to be the case of persons
without practical knowledge or experience of the
value or management of particular property, being
allowed to buy and pay an exorbitant price for it
by representations of the owner, known by him to
be untrue. But as they purchased after having time
and opportunity to ascertain for themselves value of
the property, and did in fact examine it, commenda-
tion or even false representation of its value by Gore
can not, according to a settled rule, afford ground for
rescission.

There, however, existed when the contract was made,
mortgage liens upon the hotel property for near, if
not quite, three thousand dollars, which it is alleged
in the petition and cross-petition, Gore fraudulently
concealed from them, and of which they continued

ignorant until June, 1888, when first informed in re-
gard thereto.  Gore denies he concealed existence of
the liens, or stated to them, as they allege, that the
property was unincumbered.

But it is evident they were misled and deceived
on that subject by him; for how could he, as he·
covenanted in the contract of November, 1887, make
them a good and legal title, which is equivalent to·
and means a title to property clear of claims and
liens of others, if there were existing mortgages that.
he had made no provision to satisfy, and, as now
appears, did not design to satisfy prior to or even
when the deed was to be executed and delivered by
him; for although he sold the tract of land shortly
after Mrs. Peak conveyed it to him in payment of
the first installment of purchase price of the hotel
property, no part of the proceeds, except about two
hundred dollars, was applied to pay the mortgage
debts, and so far as the record shows, they had not
been paid even when the judgment appealed from
was rendered; and in view of the alleged and un-
disputed fact that Gore was insolvent, it is not at
all reasonable Mrs. Peak would have conveyed to
him her own land, executed the two notes, and ac-
cepted his deed without an assurance and belief the
hotel property was free of incumbrance.

But, waving the question of fraud, the case seems
to us to stand thus: Gore had the right to insist·
upon complete performance of the contract on the
part of Mrs. Peak and Montgomery, which consisted
in paying deferred installments when they fell due,
and they consequently were without right to a re-

scission, provided there has been no breach or failure on his part whereby they were materially prejudiced.

Ordinarily a vendee could not be prejudiced by reason of prior liens on property purchased, if for less amount than unpaid purchase money past due by him, nor have a right to complain of the property being subjected and sold on account of his own default. But in this case, Mrs. Peak and Montgomery had not defaulted in paying the unpaid installments of purchase money, none of which was due until March, 1889, nor failed to comply with their part of the contract in any respect. But Gore had failed to clear the property of incumbrance before the first installment of purchase money was paid, and the deed was made and delivered as he was bound to do. And, as a consequence of such failure, there existed when this action was commenced, mortgage debts amounting, it is true, to not as much as the unpaid installments of purchase money, but to nearly if not quite as much as the evidence shows the hotel property was worth; and if added to the cash payment made by Mrs. Peak in March, 1888, the aggregate amount would be double the value of the property. So that Gore being insolvent, and his creditors having the right to enforce their mortgage liens on the hotel property at any time, Mrs. Peak, without fault of herself or Montgomery, but by reason of a breach of the contract by Gore, was put in danger of not only losing by enforced sale the hotel property, but also the tract of land conveyed by her in payment of the first installment of purchase money. The question in this case is, therefore, not whether

Peak, &c., v. Gore.

the unpaid installments of purchase money equaled in amount the mortgage debts that it was the duty of Gore to pay off before receiving any part of the purchase price, or undertaking to convey the property, but it is whether he did, in March, 1888, make such conveyance of the property as he had covenanted to then make. The deed made by him certainly did not convey a "good and legal title;" nor has he since tendered such deed. Moreover, the evidence shows him to be by reason of insolvency unable to discharge the mortgage liens, which is indispensable in order to full compliance with his contract.

In our opinion the purchasers of the hotel property were clearly entitled to a rescission of the contract when this action was commenced, and the lower court erred in dismissing it. Instead, a judgment ought to have been rendered, rescinding the contract of sale and purchase of the hotel property, canceling the unpaid purchase money notes, and restoring the parties in other respects to their original status so far as can be done equitably and without prejudice to the rights of others; and the judgment is reversed, and cause remanded for proceedings consistent with this opinion.