CASE 50—ACTION BY GEORGE W. SOHAN AGAINST ANNIE M. GIBSON
AND OTHERS TO ENFORCE LIEN ON LAND FOR PURCHASE MONEY.—
JUNE 1.

# Sohan v. Gibson.

APPEAL FROM HARDIN CIRCUIT COURT—T. R. MCBEATH, CIRCUIT JUDGE.

JUDGMENT FOR DEFENDANTS AND PLAINTIFF APPEALS.    REVERSED.

VENDOR AND PURCHASER—SALE OF LAND—FRAUDULENT REPRESEN-
TATION—RELIANCE BY PURCHASER—OPPORTUNITY TO DISCOVER THE
TRUTH.

1. Where, prior to a sale of land to defendant, both she and
her husband and her brother-in-law made personal examina-
tions thereof, and were afforded every opportunity to discover
the truth or falsity of plaintiff's representations as to its pro-
ductiveness, etc., and that the cellar under the house was healthy,
she could not be regarded as having relied on such representa-
tions so as to be entitled to rescind the sale on the ground that
they were false.

2. Where a vendor of real estate had paid $1,735 therefor, and the
personal property sold with the land to defendant was reason-
ably worth $300, his representation that the land, etc., was worth
$2,000, which was the price defendant paid therefor, was not
fraudulent.

3. Where certain corn standing on land at the time of the sale thereof
was sold with the land, and the vendee and her husband and
brother-in-law were afforded an opportunity to examine the
same and to ascertain the quantity and quality thereof, the fact
that the vendor represented that there were 100 bushels of corn
on the land, when in fact there were only twelve bushels, was
insufficient to show that the sale was fraudulent.

BARKER & WOODS, ATTORNEYS FOR APPELLANT.

### POINTS AND AUTHORITIES.

1. The fact that appellee may have paid too much for the land
is not of itself ground for rescission.   The chancellor is not a
mere appraiser.   McKinney v. Crady, 8 R., 259.

2. The appellee is without any standing in this case, since she
failed to restore the personal property or any part thereof.   With-
out restitution or tender, rescission can not be decreed.   Am.

& Eng. Ency. of Law, vol. 24, p. 613; Clark v. Smith, 10 R., 196; Hogan, &c. v. Tucker, &c., 25 R., 1104.

3. A contract for the sale of land can not be rescinded on account of misrepresentations when such misrepresentations are only expressions of opinion. To justify a rescission there must be actual fraud shown, and the vendor must know the falsity of his representations and have no belief in their truth. Seng v. Keller, 18 R., 656; Livermore v. Middlesboro Land Co., 20 R., 1704; Jones v. Middlesboro Land Co., 20 R., 1744; Cox v. Frazer, 21 R., 579.

4. Where the purchaser of real estate has had time and opportunity to ascertain for himself the value of the property, and after he has in fact examined it, commendation or false representation of its value by the vendor affords no ground for rescission. Buck v. McCaughtry, 5 Mon., 217; Frank v. Lacey, 3 R., 278; Newton v. Long, 13 R., 698; Peak v. Gore, 94 Ky., 533; James' Admr. v. Richardson, 7 R., 610; Long v. Duncan, 14 R., 812.

C. H. MOORMAN AND O'MEARA & JAMES, ATTORNEYS FOR APPELLEE.

POINTS AND AUTHORITIES.

1. Gross inadequacy of consideration is a badge of fraud. Inadequacy alone will arouse suspicion and induce the chancellor to a vigilant scrutiny of the facts and circumstances attending the transaction. Talbott v. Hooser, 12 Bush, 413; McHarry v. Irvine, 85 Ky., 322; Hunter v. Owens, 10 Ky. Law Rep., 651.

2. A failure to tender back personal property does not affect the right of a vendee to compensation for fraud.

3. The representations made by appellant were with reference to material facts which induced the contract to be made; they were false and known to be false and the appellee was defrauded thereby. Kerr on Fraud and Mistake, p. 53; Mills v. Lee, 6 Mon., 99; Upshaw v. Debow, 447; Hunter v. Owens, 10 Rep., 651; Perkins v. Rice, Litt. Sec. Cas., p. 218, s. c. 12, Am. Dec., 298; 54 Fed. Rep., 320; 80 Fed. Rep., 41; 29 Cal., 589; 114 Ill., 648; 6 Allen (Mass.), 413; 43 Minn., 218; 27 Neb., 515, s. c. 20 Am. St. Rep., 691; Messer v. Smyth, 59 N. H., 41.

4. The appellee was misled and deceived through the fraud of the appellant, and he can not escape liability because she might have made investigations and not have relied on his statements.

OPINION OF THE COURT BY JUDGE SETTLE—REVERSING

The appellant, George W. Sohan, sold and conveyed to the

appellee, Annie M. Gibson 31 1-2 acres of land in Hardin county, and a lot of personal property, consisting of two horses, one surrey and harness, sixteen head of hogs and shoats, two cows and calves, all the fowls on hand, one range, a child's bed, and a set of dining chairs. The consideration for the sale of the land and personal property mentioned was $2,000, $1,400 of which appellee paid in cash upon receiving the deed, and for the remaining $600 she executed to the appellant her three several notes, of $200 each, with interest from date, payable in one, two, and three years, respectively, secured by lien upon the land. The deed contained a provision to the effect that, if appellee failed to pay the first note when due, the remaining two notes were to become due and payable. After the maturity of the first note, and the failure of appellee to pay it, this action was instituted by appellant upon all three of the notes, and to enforce the lien retained in the deed to secure their payment. Appellee, Annie M. Gibson, resisted the payment of the notes, and, by answer and counterclaim, asked a rescission of the contract upon the ground that at and before the purchase of the land, and for the purpose of inducing her to make the same, the appellant falsely and knowingly represented to her that the land was fertile and very productive; that it would produce during an ordinary season 50 bushels of corn per acre; that there were 35 acres in the survey; that the land did not wash; and that the cellar under the house on the premises was healthful—all of which representations were alleged to be false, and known by appellant at the time to be false, but were then unknown to appellee to be false. The answer further avers that the appellee Annie M. Gibson and her husband were not familiar with farming lands, and were unable to judge of the quality of the land sold them by appellant, and for that reason she relied upon

and was induced by his alleged false representations to purchase the land of him. The affirmative averments of the answer and counterclaim were denied by reply, and, upon the submission of the case, the chancellor rendered judgment canceling the notes sued on, and dismissing the action, at appellant's cost. Of that judgment he complains; hence this appeal.

Appellee does not seriously rely upon the alleged shortage in acreage. Indeed, it is apparent that there is no merit in this part of her defense, for it is not likely that appellant represented that the farm contained 35 acres, when the deed from his vendor stated that it contained only 31 1-2 acres; and, moreover, appellee offered no objection to the deed made her by appellant, which also gives the number of acres of the land conveyed as 31 1-2, and thereby informed her of that fact.

Appellee's proof seems to have been directed more particularly to the other alleged misrepresentations set forth in her answer. We think the evidence tends to prove the following state of facts:

(1) That appellant advertised his land through his Louisville agent, W. H. Pipes, whose deposition appears in the record, in which it is denied that any misrepresentations were made by him as to the land, or through the advertisement. Upon the contrary, it appears from his deposition that, after appellee and her husband looked at the land, they told him they thought it exactly as represented by him, and that it was the only place they had seen advertised that came up to the advertisement.

(2) It also appears from the evidence that before appellee, who lived in Louisville, purchased the land of appellant, she went with her brother-in-law, Britt, to look at it, and did in fact with him inspect it, or have ample opportunity to do

so, and that Britt later, and before her purchase of the farm, went with appellee's husband to see it. Britt testified that the place, in his opinion, came up to the representations contained in the advertisement; that, being a contractor and builder, he, at appellee's request, estimated the value of the buildings on the land, which he found to be worth $1,000. This witness further testified that, before the consummation of the trade between appellee and appellant, he talked with and drew the check of the former for the $1,400 which she paid for the land when the deed was received by her from appellant, and he then advised her that, if she was not thoroughly satisfied with the farm, the time to make her objections was before, and not after, the trade was made, but she was then satisfied; and the witness also testified that appellant made no such representations as claimed by appellee. The appellant himself states with great positiveness in his deposition that no such misrepresentations were made by him.

(3) It further appears that appellant himself had paid $1,735 for the land when he purchased it, and that the personal property which he sold appellee with the land was worth $300.

As against these facts, we find the testimony of the appellee to the effect that appellant did represent the land to be productive, and that it would produce 50 bushels of corn per acre; that it did not wash; and that the cellar of the house was dry. Three or four other witnesses introduced by appellee testified that the land was poor and unproductive, and not worth, buildings included, exceeding $600.

Taking the evidence all together, however, we are of opinion it conduces to prove that whatever representations were made to appellee by appellant with reference to the quality and value of the land were mere expressions of opinion, not

intended to defraud or deceive, nor calculated to do so, and that appellee had every opportunity and means at hand to discover their truth or falsity. Moreover, the circumspection manifested by her in looking at the land herself, having her husband and brother-in-law, Britt, to inspect it —the latter the second time—demonstrates that she was not misled by any misrepresentations of appellant, and that she did not rely thereon.

Inadequacy of price, alone, or the payment by the purchaser of a greater price than the thing purchased is worth, will not authorize a rescission of the contract, and did not justify the cancellation of the notes sued on. It must further and satisfactorily appear that appellant, in making the sale, was guilty of actual fraud, or at least of such unfair conduct as put appellee at a disadvantage. It is manifest that the chancellor, in deciding this case, proceeded upon the sole theory that appellant had, exclusive of the notes sued on received as much as, in the chancellor's opinion, the farm was worth. This, in our opinion, was not a proper ground upon which to base the judgment. It was not the province of the chancellor to modify or change the contract between the parties merely because it was to the undue advantage of one, or the disadvantage of the other.

In Livermore v. Middlesboro Town & Land Co., 106 Ky., 140. 50 S. W., 6, 20 Ky. Law Rep., 1704, in discussing this subject this court said: "To establish actionable fraud, or fraud against which equity will relieve, . . . it must appear that the misrepresentation was of a matter of material fact, as distinguished from opinion, at the time or previously existing, and not a mere promise for the future; must be relied on by the person whose action is intended to be influenced; and must be made with knowledge of its falsity, or under circumstances which did not justify a belief in its truth. This is the

doctrine deducible from the Kentucky decisions. There are some modifications of this doctrine, but they are chiefly by way of substitution of an equivalent for some one of the essentials necessary to constitute fraudulent misrepresentations, as in the cases where it is held that a fraudulent concealment of a material matter of fact is the equivalent of an actual misrepresentation, and in cases in which a statement made as of personal knowledge, but without knowledge, was held to be equivalent to a statement whose falsity was proven."

If, as appears from the evidence to be the case, the land sold by appellant to appellee cost him $1,735, and he put with it in the sale to appellee personal property of the value of $300, it made the total cost of it to him $2,035, or $35 more than he received from appellee for it. It would seem, therefore, that he had some reason for declaring to appellee that the land was worth $2,000, and for putting forth such claims as would make it appear to be worth that sum. At any rate, it has not been shown by the evidence that he made any statement as to the value of the land which he knew at the time to be false. If the appellee had time and opportunity to examine the land, or cause it to be examined by another in her behalf, and such examination was made, she was not entitled to a rescission, or to the relief granted, although appellant may have made false representations as to its quality or value.

The case of Peak v. Gore, 94 Ky., 533, 15 R., 278, 23 S. W., 356, seems to us to be decisive of this case. The circumstances of that case worked a much greater hardship upon the purchaser than will result in this case. In that case, as in this, the purchaser was a woman. In that case the woman was a widow. In this case she has a husband, who made for her an examination of the property, and other-

wise assisted in its purchase. In Peak v. Gore, the price paid for the property was more than twice its value, and the vendor, according to the evidence, admitted that he made statements which he knew to be false. In the case at bar the evidence is conflicting as to the value of the property, but no such discrepancy exists between the price for which the property was sold and that appellant claims it is worth, and appellant positively denies making any false representations. In Peak v. Gore it is said: "The evidence makes it too plain for controversy that the hotel property for which appellants agreed to pay $10,000 was not at the time, nor is now, worth half that sum. Indeed, only one of the nine witnesses who, having knowledge on the subject, testify as to its value, say it was or is worth as much as $5,000, the value fixed by the others being from $2,000 to $4,000, so that, in view of the fact her son-in-law and co-purchaser, E. C. Montgomery, is insolvent and unable to pay any part of the purchase price, the bargain is a very hard one for Mrs. Peak, who is a widow. But the relief prayed for could not be granted for that reason alone. It is stated in the petition, and also sworn to by Mrs. Peak and Montgomery as witnesses, that pending negotiation about the trade, and also at the time the contract was reduced to writing, Gore, as an inducement for them to purchase the property, stated it was worth, and he had been offered for it, ten thousand dollars, and that its earning capacity was from twenty-five to fifty dollars per day. He practically admits making the statement as to its value, and, though not as distinctly confessing he made the other alleged statement, it is evident to us, from the manner in which his testimony is given, that he did do so. And as Mrs. Peak had at the time no experience or knowledge in regard to the value or earning capacity of hotel property, and Montgomery very little, if

any, more, it is manifest the representations of Gore unduly influenced them to make the purchase, which they both testify neither had previously any intention to do. This, therefore, seems to us, from all the circumstances, to be the case of persons without practical knowledge or experience of the value or management of particular property being allowed to buy and pay an exorbitant price for it by representations of the owner, known by him to be untrue. But as they purchased after having time and opportunity to ascertain for themselves the value of the property, and did in fact examine it, commendation or even false representations of its value by Gore can not, according to a settled rule, afford ground for a rescission."

We think it reasonably plain from the evidence that appellee, in the matter of the land trade, relied in part upon her own judgment and that of her husband, but more especially upon that of her brother-in-law, and that at least one visit to and inspection of the land by the latter occurred after she had talked with appellant about the land. Manifestly, she purchased the land after having time and opportunity to ascertain herself, and through others, the quality and value of the land and buildings, and did in fact examine it. If, therefore, appellant made any false or fraudulent representations in regard thereto, such representations can not, "according to a settled rule," afford ground for a rescission or abatement in the purchase price.

What is here said in reference to the trade as to the land applies with equal force to appellee's complaint about the corn; her contention on that score being that appellant represented that there were 100 bushels of corn on the land that would go to her in the trade, when in fact there were only 12 bushels. The corn is not mentioned in the deed, and does not appear to have been a part of the personal

property intended to pass to appellee with the land; and there is no allegation in the answer of fraud or mistake in the drafting of the deed, whereby it was omitted to be mentioned therein. In any event, the corn was standing on the land at the time of the trade, and was as much subject to the inspection of appellee and her husband and brother-in-law as was the land; and, in view of the opportunity afforded them to examine it and ascertain its quality, it is but fair to presume that such examination was duly made, and that in accepting the corn the appellee relied upon her own judgment and that of her husband and brother-in-law, as in the matter of the land.

The view of the case herein expressed makes it unnecessary for us to consider the question as to whether it was necessary for appellee to offer to return the personal property received by her of appellant under the deed, to entitle her to a rescission of the contract.

For the reasons herein indicated, the judgment is reversed, and cause remanded, with directions to the lower court to set aside the judgment appealed from, and, in lieu thereof, enter judgment in appellant's behalf for the amount of the notes sued on, the enforcement of the lien retained in the deed to secure their payment, and for such further proceedings as may be consistent with the opinion herein.