### Wilson v. Watson.

(Decided December 16, 1910.)

#### Appeal from Carlisle Circuit Court.

1. Lands—Action in Ejectment—Patents—Island—Title— Instructions.—Where the mainland bordering upon, and the islands in a river, are separately surveyed and patented, neither the grantee of the mainland nor the grantee of an island can claim beyond the calls of his entry patent.

2. Same—In such a case the grantee of the island takes title only to it and such land as may have been added to it by accretion.

3. Same.—It follows, therefore, that the court in this action of ejectment did not err in holding that appellant's title papers do not cover the land in controversy, or in refusing an instruction based upon the idea that he was a riparian owner, there being a continuous stream, when the water is reasonably high, separating his land from appellee's.

JOHN E. KANE and ROBBINS & THOMAS for appellant.

JESSE F. NICHOLLS for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

This is an action of ejectment wherein appellant, T. J Wilson, seeks to recover of appellee, Aaron Watson, two tracts of land containing one hundred acres each, situated west of Island No. 3 in the Mississippi River. The jury returned a verdict in favor of appellee, and from the judgment predicated thereon this appeal is prosecuted.

Island No. 3 was granted by the Commonwealth of Kentucky to Price and Edrington on September 19th, 1837. In the patent it was described as an island, and conveyed as an island. The Commonwealth of Kentucky made a further grant with reference to Island No. 3 to Willam Parsons on June 15th, 1872. On the same date it granted to William Parsons two towheads near the foot of Island No. 3, one containing seventy acres and the other ten acres. Appellant acquired the title granted by the Commonwealth to Island No. 3 from S. Mathis and wife, on January 31st, 1898, and acquired title to the two towheads from Noah Parsons on the 25th day of November, 1899.

One Mrs. F. E. Johnson, after obtaining the proper orders from the Carlisle county court, procured from the Commonwealth of Kentucky, on December 31st, 1897, a grant to the lower one hundred acres of land west of Island No. 3, and on June 20th, 1900, procured a further grant from the Commonwealth for the upper one hundred acres. Appellee acquired by deed such title as Mrs. Johnson acquired from the State.

At the point where the two tracts of land in controversy are located there is a large bend in the Mississippi River. The main channel of the river has been for years, and is now gradually moving west. In doing this, it has not deserted all of its old beds, but left several natural waterways. Chute No. 2 is the first of these, and separates Islands Nos. 2 and 3 from the mainland. The chute connects the river, both north and south. Large steamboats often go through it, and were doing so at the time of the trial herein. The chute is about two miles long, and varies in width from one-quarter to one-half mile; it is also of considerable depth. Going down the river we find another chute, called Chute No. 3, which extends south and flows into Chute No. 2, about one mile from the main stream of the river, and forms a waterway between Islands Nos. 2 and 3. The chute is often navigable. Further down the river is another natural waterway, which is called Sand Cut. After going a consider-

able distance it divides; that part which goes to the southwest and flows into the river is called Deep Cut; while that part which goes south-east and flows into Chute No. 2 retains the name of Sand Cut. The southern portion of the upper one hundred acres of land in controversy is separated from appellant's land by Deep Cut, while the northern portion is separated from appellant's land by Sand Cut and the lower part of the one-hundred acre tract owned by J. W. Turk. The lower tract of one hundred acres is bounded on the east by Deep Cut which separates it from appellant's land at all points. Some forty or fifty years ago there was a towhead formed where appellee's land now is. By accretions this towhead gradually increased in size and approached appellant's land. At the time it formed there was a stream of water separating it from Island No. 3. Sand Cut and Deep Cut, while they have been known in time of drought to become dry in places, are still natural waterways, and when the water is reasonably high constitute a continuous stream separating appellee's land from that of appellant.

It is not contended, nor can we say, that the finding of the jury is flagrantly against the weight of the evidence; indeed, the evidence upon the question of accretions rather preponderates in favor of appellee.

The court. in its instructions, defined an accretion, and told the jury in substance that the land in controversy was not covered by appellant's title papers and that they should find for appellee unless they believed from the evidence that the land was an accretion to appellant's lands.

There was also submitted to the jury an issue of champerty, predicated on the adverse possession by Mrs. F. E. Johnson of the lower one hundred acres at the time appellant purchased his land from Mathis on January 31st, 1898, and from Parsons on November 25th, 1899.

Appellant offered several instructions based upon the theory that he was a riparian owner, and, as such, entitled to recover the lands in controversy because they lay between him and the thread of the main channel of the river. For the error of the court in instructing the jury that appellant's title papers did not cover the land in question, and the further error of the court in refusing to give one of the several instructions offered by him and based upon his ownership to the thread of the

main channel of the river, appellant asks a reversal of the judgment herein.

In this connection we may say that the common-law rule with reference to navigable or non-navigable waters has been adopted in this State. By that rule only those waterways are deemed navigable in which the tide ebbs and flows, and all other waters, whether navigable in fact or non-navigable, are held to be non-navigable. In the case of Berry v. Snyder, et al., 3 Bush 266, the rule is thus stated: "The English common law, which our ancestors brought with them to this continent, recognized the land granted on a fresh water river as extending to the thread of the main channel, unless the words of the grant excluded this, whilst the rule was different on all those rivers, or that part of the river, subject to the ebb and flow of the sea, or, in other words, a different rule prevailed at that point where it ceased to be fresh water and became a salt water river." The doctrine of the foregoing case has been approved in the following cases: Williamsburg Boom Co. v. Smith, 84 Ky., 374; Exterkamp v. Covington Harbor Co., 104 Ky., 801; Miller v. Hepburn, 8 Bush, 332; Strange v. Spalding, 17 Ky. Law Rep., 307; Stonestreet v. Jacobs, 118 Ky., 748; Spurrier v. Hodges, 28 Ky. Law Rep., 805; Hilleary v. Wilson, 30 Ky. Law Rep., 1262. The consequence of this doctrine is that all grants of land bounded upon a river, at a point above the ebb and flow of the tide, whether navigable, in fact, or not, entitled the grantee to all islands lying between the main land and the center of the thread of the current. (Grand Rapids & Indiana Railway v. Butler, 159 U. S. 86.)

It is this doctrine that appellant is now seeking to invoke; that is, that he is the owner of the land in controversy because he is the owner of the bed of the river, and, therefore, of all islands lying between Island No. 3 and the middle thread of the main channel of the river, and not upon the ground that the land in dispute is an accretion in the ordinary sense of that word. Where the main channel of the Mississippi river was at the time of the original grant of Island No. 3 does not appear. At that time doubtless there were several channels of large size. Nor can we tell from the record, when or under what circumstances the main land and Island No. 2 were surveyed and granted. The ownership of the bed of a river is an incident to the ownership of the main land bordering on the river. Therefore, if the main land was

first surveyed and granted, without a clear reservation of Island No. 2 or No. 3, either expressed or necessarily implied, the grantee of the main land took title to both Islands Nos. 2 and 3, if they lay to the east of the thread of the main channel, and any subsequent grants of Islands Nos. 2 and 3 would be void. If, however, Island No. 2 and the main land were at the same time separately surveyed and granted, then the grantee of the main land acquired no title to Island No. 2, but according to appellant's theory, the grantee of Island No. 2 acquired title to Island No. 3, provided the latter lay between Island No. 2 and the middle of the main channel, and was subsequently surveyed and granted. In that event the patent under which appellant holds would be void, if appellant's position be correct, and for aught that appears in the record this may be true. But we are not inclined to hold that the doctrine of riparian ownership of the bed of the river, which is an incident of the main land, should be extended to islands; especially where the uniform policy of the Commonwealth has been to make independent surveys and grants of new islands as they were formed and emerged from the river. To do so would give to appellant the ownership of all islands between his island and the middle thread of the river at the time of the grant, as well as all islands that might subsequently emerge between his island and the middle thread of the river, wherever it might be. Our conclusion is that where the main land and islands are separately surveyed and granted, neither the grantee of the main land nor the grantee of an island can claim beyond the calls of his entry and patent. In such a case the grantee of the island takes title only to the island and such land as may be added thereto by accretions. We are no more inclined to hold that appellant has acquired title to all lands lying between Island No. 3 and the middle thread of the river, than we would be to take the position that the owner of Island No. 2 has the same right, or that appellee, by virtue of his patent, can hereafter extend his ownership over all the lands lying between him and the middle thread of the river, which appears to be about a mile and a half distant.

It follows, from the foregoing, that the court did not err in instructing the jury that appellant's title papers do not cover the land in controversy, or in refusing to give the instruction asked by appellant.

It was· also proper to submit to the jury the question of champerty, for appellant, by virtue of his title papers, has no constructive possession of the land in contro- versy.

Finding no error in the record prejudicial to the sub- stantial rights of appellant, the judgment.is affirmed.