## Baxter et al. v. Davis.

(Decided Jan. 26, 1934.)

C. C. WILLIAMS for appellants.

S. D. LEWIS, JOEL M. JONES and B. J. BETHURUM for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

This appeal seeks a reversal of a judgment of the Rockcastle circuit court, awarding to the plaintiff vendor recovery against the defendants upon lien notes,

aggregating $3,000, with interest, and directing enforcement of lien and sale of the property for its satisfaction.

In December, 1929, the appellee, L. H. Davis (plaintiff below), filed his petition in equity in the Rockcastle circuit court, wherein he alleged that in June, 1925, he had sold to the defendants, Thelma Baxter and Ed Baxter, her husband, a certain small tract of land situated on the Rockcastle river, in Rockcastle county, Ky., known as the Walnut Grove bathing beach and camp ground, for the agreed price of $5,000, upon which $2,-000 was then paid him in cash, and, for the balance, six interest-bearing lien notes were given, each for the principal sum of $500, with precipitating clause and payable annually and consecutively thereafter.

The petition further alleged that he, simultaneously with the execution and delivery to plaintiff of these purchase-money notes, conveyed by proper deed the property to the defendant Thelma Baxter, who at once took over its possession and control. Also it alleged that the defendants had thereafter made two payments of annual interest accruing upon said lien notes, but had failed to pay any of said notes, all long past due, or any part of same. Wherefore, plaintiff prayed judgment against the defendants for the amount of said notes, with interest from July 11, 1927, for enforcement of his vendor's lien upon the property, and that it be sold for the satisfaction of his debt.

Defendants filed answer and counterclaim, admitting their execution and delivery of the notes sued on and their cash payment of $2,000 upon the purchase price of the land, but counterclaimed with the averment that, at the time they purchased the land, they were not acquainted with its nature or character, and that plaintiff had at the time fraudulently represented and guaranteed that it did not overflow, when plaintiff then well knew that the property was subject to and had been repeatedly overflowed; that plaintiff had then further fraudulently represented to them that the property was dry and most suitable for converting into a camp ground (that being the purpose for which he was told they wished to acquire and use it), when plaintiff then knew the representation was false, and that the property was in no wise suitable or fit for such purpose; and that defendants had no knowledge or information whatever, at the time or prior thereto, of the falsity of these repre-

sentations, but that they relied upon, and were deceived and induced, wholly by plaintiff's representations so made them, to buy the property for a camp ground. Further, they pleaded that the said tract of land was both then represented to them and later described in the deed conveying it to them as containing 7½ acres, whereas, upon its later survey, it was found to contain only a fraction over 5 acres. Further, they averred that they, after purchasing the property and in the course of converting it into a bathing beach and tourist camp, constructed improvements thereon of the value. and cost to them of $1,200, which expenditure they would not have made except for their full reliance upon the truth of plaintiff's false and fraudulent representations made them that the land was dry, was not subject to overflow, and was ideally suitable for the purpose of a tourist camp, for which bought.

Therefore, the defendants counterclaimed and prayed that their contract for the purchase of the property, procured by plaintiff through fraudulent misrepresentations, be canceled; that the defendants be adjudged to recover of plaintiff the $2,000 paid him, with interest thereon from June 29, 1925, and the further sum of $1,200, by them expended for improvements erected upon the property; and that plaintiff's petition be dismissed with costs.

Reply and answer was filed to counterclaim, whereby plaintiff denied its averments and alleged that he sold the defendants the tract of land in evidence as a camp site and by boundary only, and that he had gone over the boundaries of the tract with them and had clearly pointed them out to the defendants, by reason of which they thereby learned and fully knew the shape, size, and quantity of land they were to and did receive when they bought the site; that it was sold to them only as a camp site "in boundary by gross," without any representation that it contained a designated number of acres, and the acreage mentioned in the deed was for the purpose of designation only and was so definitely understood by the defendants at the time of their buying the property.

Upon these issues thus formed by the pleadings and proof taken, the cause was submitted for judgment, when the chancellor adjudged that the defendants were not entitled to receive anything under their counter-

528

claim, but that the plaintiff should recover his debt of $3,000 and interest and other relief as prayed.

Complaining of this judgment as erroneous, the defendants have prosecuted this appeal.

As disclosed by the record, the evidence is strongly in conflict as to the facts. The testimony of the plaintiff (appellee) and his witnesses tends to show that, upon the beginning of negotiations between the parties for the sale and purchase of this small river tract, one or two conferences were had between them, when it was arranged for them to meet and together go over this property, so that appellants might make a personal inspection and full examination of it in order to learn its location, size, and fitness for a bathing beach and tourist camp.

It is admitted by the parties that, pursuant to this plan, they met and went over this property, when a full examination was made of it and its boundaries pointed out to appellants as was also (according to plaintiff's testimony) the prior high-water mark of the river, at "high-tide," upon this land.

Appellee further states that, some twenty odd years prior to this sale, he bought this small river tract at a cost of $37.50 and constructed a camphouse thereon at a cost of some $25, which he and his friends had for years used as a fishing camp, but that the value of the property as a camp site was later greatly enhanced by the construction of the Dixie highway; that the highway made it generally accessible and served to bring to it many tourists and travelers, which gave the site a new and special value and fitness for use as a tourist camp.

He further testified that only a small portion of the tract, perhaps an acre or two next the river, was subject to overflow, leaving an ample amount of level and higher ground, which the river did not overflow, upon which to construct the buildings of the camp; and that the appellants, upon buying the property, had improved it, and for a year or so had profitably run it as a camp site, but that, because of the loose and immoral way in which it was later run by Thelma Baxter or her lessee, a Mrs. Oaks, which gave the camp a bad reputation, the patronage which the camp had at first enjoyed was driven away, and it became a losing business. The plaintiff also testified that no complaint or claim had ever

been made by appellants to him that the property was unsatisfactory or that it had been misrepresented by appellee to them in any respect, until nearly five years after their purchase of it, and was only then made by counterclaim, when he, because of appellant's continuing default in the payment of their purchase-money notes, had instituted suit against them thereon for recovery.

On the other hand, the evidence of the appellants and their witnesses in support of their counterclaim is in striking conflict with that given by appellee and his witnesses. While it is admitted both by Thelma Baxter and her husband, Ed Baxter, that they visited and went over the property with the appellee, Mr. Davis, in June, 1925, and then made a full inspection and examination of the property and its boundaries to ascertain its fitness for use as a tourist camp, they further testified that Mr. Davis then represented to them that the tract contained 7½ acres, and that only a very insignificant portion of it was ever overflowed; also, that he then stated that he had, both by Mr. Lee and Mr. Woodall, been offered $4,000 for the site, but that he would not take a cent less than $5,000 for it. Further, the appellant Thelma Baxter testified that she was a very illiterate woman, without either schooling or business experience, and that her husband, though a brickmason by trade, was also without business experience outside of his trade, while, on the other hand, the appellee was a shrewd, sagacious, and rich trader, who artfully and effectively made false and fraudulent representations as to the property to them, which they believed and had relied on, and which induced them to buy and improve the property, as they did, to their great loss and damage.

Appellants, complaining most feelingly and earnestly of the judgment rendered against them, by counsel insist that the learned chancellor erred in his ruling (1) because of the deficiency in the quantity of the land conveyed them; and (2) because of vendor's misrepresentations as to the value and character of the land, and also his false representations as to offers received for it.

Turning our attention to appellants' first contention, that they were entitled to a rescission of the contract, or cancellation of the deed, because of the alleged deficiency in the quantity of the land conveyed of more than 10 per cent., we do not regard this contention as

being well urged or meritorious. The calls in the deed upon which this contention is made are: "Thence S. 42 E. 12 poles to a stake at river; thence down the river with its meanderings on the north side S. 40 W. 20 poles to a stake." Appellants contend that under these calls the land conveyed them extends but to the bank of the, river, while their vendor claims that, under a proper construction of the calls, the deed conveyed also the land abutting and extending from the bank to the thread or middle line of the river. According to the later survey made of this abutting and intervening space between the bank and the thread of the stream, it contains something over 2 acres, which, when added to the 5 acres embraced within the calls and surveyed only to the bank of the stream, makes a total of over 7 acres, thus satisfying the amount of acreage called for by the deed. It is clearly established by the evidence that Rockcastle river, upon which this land abuts, is not a navigable stream, and therefore the call of the deed, given as going to the bank of the river, should be extended to the middle of it, as the true boundary line of the tract.

In the case of Ford et al. v. Commonwealth of Kentucky, 156 Ky. 428, 160 S. W. 1080, 1081, the opinion quotes with approval the applicable rule, as laid down in 3 Washburn on Real Property, page 632, as follows:

"In respect to streams and rivers which are not navigable—that is, in which the tide does not ebb and flow—the rule seems to be universal that describing land as running to the stream or the bank, and by it or along the stream or the bank, extends to the middle or thread of the stream, the filum aqua, unless there is something in the description clearly excluding the intermediate space between the edge or bank of the stream and its thread."

Also, other statements of the rule, to like effect, are in the opinion cited and quoted with approval as having been applied in the case of Stonestreet v. Jacobs, 118 Ky. 745, 82 S. W. 363, 1012, 26 Ky. Law Rep. 628, 1015.

In the case of Runion v. Alley, 39 S. W. 849, 850, 19 Ky. Law Rep. 268, this court, again declaring and applying the rule, said:

"It is a well-settled rule of law that a conveyance of land to a water course, and thence with the same,.

passes title to the thread of the stream, unless other-wise provided or indicated.''

See, also, the case of Wilson v. Watson, 141 Ky. 324, 132 S. W. 563, 35 L. R. A. (N. S.) 227; and Jean v. Brentlinger, 155 Ky. 509, 159 S. W. 1139; City of Covington v. State Tax Commission, 231 Ky. 606, 21 S. W. (2d) 1010.

Applying this rule to the facts of the present case, the appellant is shown to have received 7 and a fraction acres, as called for by the deed, and therefore renders it unnecessary to further determine whether or not the sale made in the instant case was one merely of a designated boundary, without respect to its acreage content, or was a sale of the tract in gross with a claimed 10 per cent. deficiency in the quantity of acreage conveyed and paid for.

Next considering appellants' further contention of a right to rescission of their contract, because of vendor's alleged fraudulent misrepresentations made as to the value of the tract sold them, alleged false claim of receipt of high offers for it, and further false misrepresentations made as to the quality of the land in respect to its fitness for a camp site as one being free from overflow: We may here observe, before entering upon a discussion of the merit of these points, insisted upon as grounds for reversal of the lower court's judgment, that these contentions, even were they found meritorious if presented by independent action for damages, are not here timely made and urged by counterclaim to vendor's petition, seeking recovery against defendants for long default in payment of their purchase-money notes. Therefore we do not regard it as necessary to enter into an elaborate discussion of these assignments of error here insisted upon. Appellants admit they were in the possession, use, and control of this property for over four years, during which period they enjoyed and appropriated the income derived from its operation as a bathing beach and tourist camp, without ever uttering during this time any word complaining of misrepresentations or expressing any dissatisfaction with their purchase, nor did they ever make complaint of misrepresentations or expressions of dissatisfaction until they were sued for breach of contract, because of failure to pay the notes executed for the balance due on the land. Not only does it appear that they did not make com-

plaint of the contract as having been procured by fraudulent misrepresentations, but, on the other hand, it is admitted that they for two years paid the annual interest accruing on these notes, which conduct clearly tends to show their ratification of this contract.

Further, we are of the opinion that appellants' contention, that the mere fact of their vendor's buying the property at a very low cost and selling it to them at a greatly advanced and multifold price—regardless of the very material change of conditions and circumstances arising to enhance its value—was in itself sufficient to constitute the sale such an unconscionable contract made with them by a shrewd trader, even though dealing at arm's length, as was sufficient evidence to establish and show them to be the victims of such actionable fraud as would entitle them to a rescission of their contract of purchase, is without merit. Equally untenable do we regard their claim to a right of rescission of their contract because they pleaded and testified that they bought this camp site while influenced by their vendor's representations, falsely made, that he had received offers from named persons of $4,000 for the property. These misrepresentations, conceding arguendo that they were made, we are of the opinion do not measure up to the standard of actionable fraud, as same has been defined and declared by this court to be required as grounds for rescinding an executed contract of purchase of realty. The claims of fraudulent misrepresentations here made are almost identical, though perhaps less impressive, with those presented in the case of Peak v. Gore, 94 Ky. 533, 23 S. W. 356, 357, 15 Ky. Law Rep. 278. In that case the facts were that appellee, by false representations that an hotel was worth $10,000 and that he had been offered that sum for it, and that its earning capacity was from $25 to $50 per day, induced appellants, who were persons without practical knowledge or experience of the value or management of hotel property, to purchase it for that sum, when, in point of fact, it was hardly worth $5,000. Suit was brought for rescission of the contract, and this court, through Judge Lewis, after reciting the facts, said:

"But, as they purchased after having time and opportunity to ascertain for themselves the value of the property, and did in fact examine it, commendation or even false representation of its value by

Gore cannot, according to a settled rule, afford ground for rescission.''

Certainly in the instant case the appellant and her husband had full time and opportunity to make investigation as to the true value of the camp site and as to the truth of the offers represented as received for it by vendor, if made. Such representations cannot, according to the fixed rule of the cited cases, afford ground for a rescission of the purchase price. Sohan v. Gibson, 118 Ky. 403, 80 S. W. 1173, 26 Ky. Law Rep. 279.

This rule as thus announced in the cited case has been repeatedly followed, and reannounced and applied by this court in numerous later cases coming before it upon facts involving the like rule and doctrine.

Again, in the case of Livermore v. Middlesborough Town-Lands Co., 106 Ky. 140, 50 S. W. 6, 13, 20 Ky. Law Rep. 1704, the court, in considering that character of misrepresentations which constituted actionable fraud, entitling one to rescission of contract, said that the doctrine deducible from the Kentucky decisions is that, to establish actionable fraud, ''it must appear that the misrepresentation was of a matter of material fact, as distinguished from opinion, at the time or previously existing, and not a mere promise for the future; must be relied upon by the person whose action is intended to be influenced; and must be made with knowledge of its falsity, or under circumstances which did not justify a belief in its truth.''

To like effect, see 12 R. C. L. pages 281 and 284; Perkins v. Embry, 72 S. .W. 788, 24 Ky. Law Rep. 1990; Newton v. Levy, 82 S. W. 259, 26 Ky. Law Rep. 476; Sohan v. Gibson, 118 Ky. 403, 80 S. W. 1173, 26 Ky. Law Rep. 279; Cornett v. Kentucky River Coal Co., 175 Ky. 718, 195 S. W. 149; and Ripy v. Cronan, 131 Ky. 631, 115 S. W. 791, 793, 21 L. R. A. (N. S.) 305, wherein the court said:

''The cases have gone so far as to hold that if the seller should even falsely affirm that a particular sum had been bid by others for the property, by which means the purchaser was induced to buy and was deceived as to the value, no relief was to be afforded, for the buyer should have informed himself from proper sources of the value, and it was his own folly to repose on such assertions made by

a person whose interest might so readily prompt him to invest the property with exaggerated value. * * * In the sale of property, especially real estate, which may be seen of all men, the law imposes a duty upon the vendee as well as upon the vendor, and it refuses assistance to those who have it abundantly in their hands to take care of themselves. Every one who is sui juris capable of contracting and being contracted with is his own guardian.''

Turning our attention to the matter of vendor's alleged false representations made to the effect that but a small portion or corner of the tract of land conveyed was subject to overflow, it is to be noted that vendor denied having made such representation, and that the evidence as to the upper portion of the tract having ever been overflowed is in decided conflict. The chancellor, it is manifest, determined upon this conflicting evidence either that appellee had not made such false representations as to the land being free from overflow, or else, if made, that it, in fact, was substantially true. Therefore, under the rule requiring us to give due weight to the chancellor's finding of fact under conflicting evidence and not to disturb his judgment found on the facts, where the evidence is conflicting and the mind is left in doubt as to the truth, we do not feel justified in disturbing it. Taylor v. Mullins, 151 Ky. 597, 152 S. W. 774.

In addition to the reasons hereinabove assigned for our conclusion that the grounds above presented for a rescission of the contract are not to be sustained, there remains the further decisive ground for refusing appellants the relief prayed, in that they have delayed overlong and for nearly five years, after full opportunity was given them, as hereinabove discussed, in which to discover their vendor's alleged fraud in making the representations, now complained of as false and fraudulent. The applicable rule, denying them the right at this late date and in this manner to seek relief, through a rescission of the contract, sought by counterclaim, is well stated in the case of Central Life Insurance Co. v. Taylor, 164 Ky. 844, 176 S. W. 373, 374 (approved in Head v. Oglesby, 175 Ky. 613, 194 S. W. 793), as follows:

"Where one sues in equity to obtain the rescission of a contract, basing his claim to the relief sought upon the ground of fraud inducing the execution

of the contract, he must act promptly in making his election of remedies; for, if he fail to act promptly upon the discovery of the fraud, he loses his right to rescission in equity, and his only remedy then is an action for damages for the deceit. Culton v. Asher, 149 Ky. 659, 149 S. W. 946; Buford v. Brown, 6 B. Mon. 553.''

Again is the same rule reiterated in Cornett v. Kentucky River Coal Co., 175 Ky. 718, 195 S. W. 149, 151:

"In order to be able to avail himself of fraud in the execution of the contract, the party attempting its avoidance must proceed within a reasonable time, and must not have ratified the contract after he has discovered, or could have discovered by the exercise of diligence, the existence of the fraud.

"Appellant is presumed to have known the contents of the writing at least after its recordation in July, 1905. He never did repudiate it until after he was sued to enforce it. * * * His actions were clearly such a ratification of the contract as to estop him from relying upon any infirmity in the execution of it. Golden v. Cornett et al., 154 Ky. 438, 157 S. W. 1076; Tennis Coal Co. v. Asher & Hensley, 143 Ky. 223, 136 S. W. 197; Fletcher, etc., v. Wireman, 152 Ky. 565, 153 S. W. 982; Pomeroy on Equity Jurisprudence, vol. 2, secs. 864, 916, and 965; Culton v. Asher et al., 149 Ky. 659, 149 S. W. 946; Bispham on Equity, sec. 260.''

Therefore, the decree of the learned chancellor being in accord with our conclusions here reached, it follows that the judgment should be, and it is, affirmed.