### Sutton et al. v. Terrett et al.

Feb. 1, 1946.

Webb & Webb, and Amberg & Amberg for appellants.

J. E. Warren and E. J. Stahr for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE REES— Reversing.

George B. Terrett died intestate March 16, 1920, a resident of Fulton county. He left as his only heirs at law nine children, six of whom were under 21 years of age. The youngest child Josie Terrett, now Mrs. Thomas Kemp, was one year of age. J. E. Terrett, the oldest child, qualified as administrator of his father's estate and also as guardian of five of his infant brothers and sisters. Norman Sutton, husband of one of the adult daughters, qualified as guardian of Dorothy Terrett, who was then 15 years of age. George B. Terrett, at the time of his death, was the owner of real estate in the city of Hickman and four farms in Fulton county. One of these farms, referred to in the record as the "home place," contained 491 acres and bordered on the Mississippi river. On May 18, 1920, J. E. Terrett filed two suits in the Fulton circuit court. In one he sought to have the city property and one small farm sold on the ground of indivisibility and the proceeds divided among the heirs. In the other suit he sought a division of the remaining real estate which consisted of three farms; the home place of 491 acres, one of 27¾ acres known as the Briggance farm, and one of 98 acres known as the Willie Jones farm. These three farms did not adjoin. The property described in the first suit was sold and the proceeds were divided among the heirs. In the second suit commissioners were appointed to make a division. They allotted to J. E. Terrett and Mattie Sutton, two of the adult heirs, the Briggance farm and the Willie Jones farm. They divided the home place of 491 acres into seven tracts, and allotted tract No. 1 to Lottie Adair, one of the adult heirs. The remaining six tracts were

allotted to the six infant heirs. The report of the commissioners was confirmed, and deeds were executed by the Master Commissioner and delivered to the heirs. Lottie Adair sold the tract allotted to her, and in 1937 it was conveyed by the then owner to appellant O. L. Sutton, husband of Dorothy Terrett Sutton. The other heirs now own the separate tracts allotted to them in 1920. The 491-acre tract bordered 390 poles on the south bank of the Mississippi river which flows from east to west at this point. In front of this body of land is a large island, known as No. 8 island, which divides the river into two channels, both of which are navigable. The south channel is known as No. 8 chute, and the distance from the south bank of the chute to the south shore of the island in 1920 when the Terrett farm was divided was about one mile. Since the division the chute, or south channel of the river, has moved north by cutting into the south shore of the island and depositing sand and silt along the south bank of the chute. In 1941 J. E. Terrett, Mattie Sutton, and Lottie Adair brought this action against the remaining six heirs of George B. Terrett, deceased, for the sale of a tract of land containing approximately 500 acres which they alleged consisted of land owned by George B. Terrett at the time of his death, and accretions since formed to the tract by alluvial deposits of the Mississippi river. They further alleged that the land was not divided among the heirs of George B. Terrett in the division ordered by the Fulton circuit court in the action filed in that court on May 18, 1920, and that each of the heirs was the owner of an undivided one-ninth interest therein. The defendants denied that the commissioners appointed by the court in 1920 left out any part of the 491-acre tract, and alleged that all of the land owned by George B. Terrett at the time of his death was divided, and that the land sought to be sold had been added to the 491-acre tract since the division and by operation of law had become a part of their separate tracts. The chancellor found that the commissioners appointed to divide the George B. Terrett land failed to divide all of the 491-acre tract; that the undivided portion and the accretions constituted the land in controversy and belonged to the heirs of George B. Terrett; and that each of the plaintiffs owned a one-ninth undivided interest therein. He found that the land was indivisible, and ordered it sold and the proceeds

divided among the nine heirs. The defendants have appealed.

The purpose of the second suit filed by J. E. Terrett in 1920 was to obtain the division of all the lands owned by George B. Terrett at the time of his death which had not been ordered sold in the first suit. The commissioners in making the division started at the northeast corner of the 491-acre tract on the chute bank. The farm was divided into seven tracts, and the north line of each tract was located on the chute bank. The north line of tract No. 1, which was allotted to Lottie Adair, was described as follows in the commissioners' report and the Master Commissioner's deed: "Begins at the N. E. Corner of the original Home Tract, on the Chute Bank, runs with said Chute Bank, 41 poles to a stake."

The north line of tract No. 2 was described as follows: "Begins at a point on the Chute Bank, same being the N. W. cor. of Lottie Adair's Tract, and runs with said Chute Bank, 44 poles to a stake on the Chute Bank."

The north lines of the other tracts were similarly described. These lines ran with the chute bank distances ranging from 45 to 77 poles. Evidence to the effect that a sand bar had formed north of the north line established by the commissioners and against the south bank of No. 8 chute prior to the division was introduced by appellees, but the preponderance of the evidence shows that this sand bar was covered by water when the river was at its normal stage. It is apparent from the evidence that the chute bank referred to in the commissioners' report was recognized as the south bank of the south channel of the river at the time the division was made.

It is the rule in this state that where the line of a grant runs to the bank of a navigable or nonnavigable stream and along the stream, or the bank, the grant extends to the thread of the stream and all accretions belong to the riparian owner as an incident to his title unless there is something in the description which clearly excludes the space between the bank and the thread of the stream. Turk v. Wilson's Heirs, 266 Ky. 78, 98 S. W. 2d 4; McGill v. Thrasher, 221 Ky. 789, 299 S. W. 955; Bedford-Nugent Co. v. Herndon, 196 Ky. 477, 244 S. W. 908; Caughlin v. Wilson, 167 Ky. 35, 180 S. W. bank of No. 8 chute prior to the division was introduced

40; Wilson v. Watson, 144 Ky. 352, 138 S. W. 283, Ann. Cas. 1913A, 774. Appellees concede this to be the rule, but insist that the present case falls within the exception to the rule, since the language used in the report of the commissioners and the deeds made pursuant thereto clearly excludes the space between the chute bank and the thread of the chute, or the south channel of the river. It is argued that the description of the north line of the 491-acre farm, when it was divided into seven tracts as beginning at the northeast corner of the original home tract on the chute bank and running thence with the chute bank to a stake on the chute bank at the north-west corner of the original homestead tract, limits the title of the grantees to the chute bank and the deeds convey no title or interest in the bed of the stream, or chute, or any accretions then or thereafter formed thereon. The following cases are cited in support of the argument: Fleming v. Kenney, 4 J. J. Marsh. 155; Penrod v. Bruce, 61 S. W. 1, 22 Ky. Law Rep. 1697; Robinson v. Wells, 142 Ky. 800, 135 S. W. 317; Jenkins v. Sadler, 212 Ky. 581, 279 S. W. 982; Hylton v. Combs, 229 Ky. 1, 16 S. W. 2d 754; Fairchild v. Mayo, 232 Ky. 778, 24 S. W. 2d 599; Dawson v. Johnson, 249 Ky. 839, 61 S. W. 2d 878. An examination of these cases discloses that all of them, with the possible exception of the early case of Fleming v. Kenney, are easily distinguishable from the present case. In Penrod v. Bruce, William Rogers owned land on the south side of a stream and his title extended across the stream to the north bank. He separated the bed of the stream from the land, and sold to one William Gaston the land on the south side of the stream and to the owner of the land on the northern bank the bed of the stream. In Robinson v. Wells, the grantor owned land on both sides of a stream. He sold the land on the west side, and the description in the deed extended the line running east across the stream to the east bank and thence down the stream on the east side thereof and binding thereon with its meanders to a sycamore tree. Later he sold the land on the east side of the stream, and the description in the deed contained a call beginning at a sycamore tree standing on the east bank of the stream and running thence up the stream with the meanders thereof. It was contended that this deed conveyed to the grantee title to the middle, or thread, of the stream, but the court held that the grantee had

notice of the prior sale to another of the bed of the stream and a portion of the eastern bank thereof, and therefore the general rule did not apply. In each of the other cases relied upon by appellees, there were expressions in the deed which clearly indicated that it was not intended to convey title to the thread of the stream. All of these cases recognize the general rule.

In the case before us, the north line of the tract of land divided by the commissioners in 1920 is described as running with the south bank of the river. The stakes referred to were intended to mark the boundaries between the adjoining tracts and not the northern limit of the land being divided. There is nothing in the commissioners' report or the Master Commissioner's deeds indicating an intention to limit the northern boundary of the various tracts allotted to the Terrett heirs to the southern bank of the river. It was the duty of the commissioners to divide all of the 491-acre tract, and failure to perform this duty would have to be clearly established in order to sustain appellees' claim. In City of Covington v. State Tax Commission, 231 Ky. 606, 21 S. W. 2d 1010, 1012, the question was whether or not the corporate limits of the city of Covington extended to the thread of the Ohio river, and the solution of the question turned on the proper construction of the description of the north line of property conveyed to Thomas Kennedy by James Welch in 1801. The north line was described in the Welch deed as follows: " 'Beginning at a Beech And Honey Locust; thence south down the Ohio, eighty-four degrees west, seventy-four poles, south seventy-one degrees west, ninety-four poles, south sixty degrees west sixty poles, south eighty-two degrees west, ninety-two poles, to Beech and Hopwood on the river bank.' "

It was held that Kennedy acquired title to the thread of the river. After stating the rule recognized in this state and citing numerous cases, the court said:

"It was also held in the Stonestreet case, (Stonestreet v. Jacobs, 118 Ky. 745, 82 S. W. 363, 364, 1012, 26 Ky. Law Rep. 628, 1015), and some others of the cited ones, that: 'The mere mention of a monument on the bank of a stream as the place of beginning or end of a line is not of itself sufficient to control the ordinary presumption that the grantee will hold to the thread of the stream,' but that, where it was the evident intention

and purpose of the grantor to convey the land to the stream itself, it would carry title to the grantee, under the rule, to the center of the stream, notwithstanding the mention of monuments on its bank as a place of beginning or ending of that line. To the same effect as the Stonestreet case see Reichert v. Ellis Ferry Co., 184 Ky. 150, 211 S. W. 403, where trees and monuments on the bank of the river were called for in the river line descriptions, and this court held that it was the intention and purpose of the grantor (there being nothing in the deed to the contrary) to convey to the full extent of his title, i. e., to the thread of the stream.

"It is therefore apparent that, under the description of the deeds to the land upon which the town of Covington was originally located, and the act of the Legislature incorporating it, the Ohio river was made the northern boundary, and that under the deed from Welch to Kennedy the latter took title to the thread of that river."

In Baxter v. Davis, 252 Ky. 525, 67 S. W. 2d 678, 680, the deed contained these calls: " 'Thence S. 42 E. 12 poles to a stake at river; thence down the river with its meanderings on the north side S. 40 W. 20 poles to a stake.' " It was contended that under these calls the land extended only to the bank of the river, but it was held that the grantee acquired title to the thread of the stream.

The City of Covington, Stonestreet, and Baxter cases are controlling here. It follows that the chancellor erred in adjudging that appellees own any interest in the land in controversy.

The judgment is reversed, with directions to dismiss the petition and to enter a judgment in conformity herewith.