## Culton, et al. v. Asher, et al.

(Decided October 4, 1912.)

### Appeal from Leslie Circuit Court.

1. Conveyance—Equity Will Not Cancel Executed Conveyance Unless Ground For Apparent.—Canceling an executed conveyance is the exercise of a most extraordinary power in courts of equity, and when asked for on any ground, it will not be granted, unless the ground for its exercise most clearly appears.

2. Vendor and Purchaser—Buyer Need Not Disclose Knowledge That May Lessen or Enhance Value of Article.—A person may, with perfect honesty and propriety, use for his own advantage, the superior knowledge of property he desires to purchase, that has been acquired by skill, energy, vigilance, and other legitimate means; and, in the ordinary business and commercial affairs of the world, he is not under any legal obligation to disclose to the person he is trading with, the reasons that influenced him to desire the property, or his views as to its value, or the sources of information at his disposal. Nor need he disclose the knowledge that he has concerning the circumstances or condition that may depreciate or enhance its value.

3. Contracts—What Not Such Fraud As To Authorize Rescission.—When the parties are dealing at arm's length, and there is no relation of confidence or trust between them, and no representation or statement made that would have a tendency to deceive or mis-

lead, and there are no special circumstances imposing a duty to speak, mere silence or the non-disclosure of facts in the possession of one of the parties will not amount to such fraud as would authorize a rescission of the contract, or justify a refusal to specifically enforce it.

4. Vendor and Purchaser—Statements of Value of Property—When Representation Actionable.—Although statements of the value of property are ordinarily considered as mere expressions of opinion, and are therefore not actionable, the rule is otherwise where the misrepresentation relates to some specific, extrinsic fact which materially affects the value; and, in such case, if the fact is peculiarly within the vendor's knowledge, and the statement is made with knowledge of its falsity, or what the law regards as the equivalent thereto, and with the intent that the purchaser should act in reliance thereon, which he does to his injury, the representation is actionable.

5. Fraud—Laches—Negligence.—A person who is injured by fraud must be prompt in seeking redress, and he must prosecute his suit with diligence. Laches and negligence are always discountenanced. Nothing can call a court of equity into activity but conscience, good faith, and reasonable diligence, and when these are wanting the court is passive, and does nothing.

6. Limitation—When Action May Be Barred by Laches.—If a person fails to bring his suit until after the expiration of the period prescribed by the statutes of limitations, he is necessarily barred from maintaining his action; but he may, nevertheless, in certain actions in equity, be barred by laches, if he delays for a period much shorter than the statutory period of limitation, to bring his case promptly, or to prosecute it diligently.

7. Laches—What Is Laches—Estoppel.—Laches, in legal significance, is not mere delay, but delay that works a disadvantege to another. So long as the parties are in the same condition, it matters little whether one presses a right promptly or slowly, within limits allowed by law; but when, knowing his rights, he takes no steps to enforce them until the condition of the other party has, in good faith, become so changed that he cannot be restored to his former state, if the rights be then enforced, delay becomes inequitable and operates as an estoppel against the assertion of the right.

8. Land—Sale of—Rescission of Contract—Mistake of Seller—Fraud of Purchaser.—Where a sale of land was made at a given price per acre, and the deed, through the fraud of the purchaser, and the mistake of the seller, contains more land than it recites is conveyed, or is paid for, these facts constitute no ground for a rescission of the contract, since there is no allegation of insolvency laid against the purchaser, and the seller has an adequate remedy at law.

T. G. LEWIS and METCALF & JEFFRIES for appellants.

D. K. RAWLINGS and W. W. POINTS for appellees.

Opinion of the Court by Judge Miller—Affirming.

On April 21, 1902, the appellants, A. B. Culton, Mary R. and J. C. Tarvin, and J. M. Culton, together with M. R. Culton and Deborah Culton, executed a title bond to A. J. Asher, whereby they sold, and contracted to convey to him, fourteen tracts of land in Leslie County, for the agreed price of $1.75 per acre. A small part of the consideration was paid at or shortly after the execution of the title bond; a larger portion, consisting of the remainder of one-half of the purchase money, was to be paid within thirty days from that date, or as soon as the number of acres could be ascertained by actual surveys of the land sold; and the remaining one-half of the purchase money was to be paid within twelve months after the date of the title bond. The title bond described the land in general terms, either by patent number or by a general description, which made it necessary to have surveys made for the purposes of accurately describing the several tracts by metes and bounds, and ascertaining the acreage and the amount of the purchase price. Subsequently, on August 26, 1903, and pursuant to the terms of the title bond, the grantors therein executed and delivered to A. J. Asher and W. J. Hodges, who was a son-in-law of Asher, a deed, conveying what is now claimed to have been a considerable portion, but not all, of the lands described in the title bond. The deed purported to convey 2095.39 acres for a consideration, including interest thereon, amounting to $3,722.16. Asher and Hodges accepted the deed, paid for the land, and took possession thereof. Hodges died on January 3, 1911, leaving a widow, and an infant child the defendant Willie Jean Hodges, who was posthumously born on April 12, 1911. On July 31, 1911, the appellants, who constituted four of the six grantors in the deed to Asher and Hodges, brought this action against Asher, and Hodges' administratrix, his widow and infant child, for the purpose of canceling said title bond and deed above referred to, upon the ground that they were obtained by fraud. The circuit judge sustained a general demurrer to the petition, and upon plaintiffs' failure to amend, it was dismissed; and from that judgment the plaintiffs prosecute this appeal.

For grounds constituting the fraud, appellants alleged: (1) That at the time of the sale of the land and

the execution of the deed therefor, Asher and Hodges were well acquainted with the land, and the timber thereon, and the value of same, and that the plaintiffs, and the other grantors in the deed, were not acquainted with said lands, or with the timber thereon; but were, on the contrary, in entire ignorance of the value of the property; (2) that the land was sold for $1.75 per acre, when it was really worth $8 per acre, and that these facts were well known to Asher and Hodges at the time, and were not known to the plaintiffs and the other grantors, or to either of them; (3) that when they made the deed and received the purchase price of $1.75 per acre, the plaintiffs were in financial straits; in urgent need of ready money; unable to raise any money, or procure it in any way, except by selling said land to Asher and Hodges; that this financial embarrassment on the part of the plaintiffs was well known to Asher and Hodges; and that by reason of appellants' then financial straits, and the ignorance upon their part of the value of the land, the price paid therefor by Asher and Hodges was so grossly inadequate, as of itself, to impute fraud to them; (4) that Asher and Hodges held out and represented to the plaintiffs that $1.75 per acre was a fair and adequate price for the land; that plaintiffs believed said statements and representations, although they were false and untrue, and known to be so by Asher and Hodges at the time, and were made to appellants for the purpose of perpetrating a fraud upon them, and inducing them to part with their lands for a grossly inadequate consideration; and, (5) that the lands conveyed by said deed embraced an excess of at least 600 acres over and above, and in addition to, the 2095.39 acres purported to be conveyed and actually paid for, all of which excess acreage was so included in said deed by the fraud of Asher and Hodges, and through mistake on the part of the appellants.

By way of excuse for their failure to return the purchase money, which is ordinarily required as a prerequisite to the maintenance of a suit for rescission, plaintiffs allege that within less than two years after the execution of the deed, Asher and Hodges cut, removed and converted to their own use, timber trees from said lands of a value largely in excess of the total purchase price of the land at $1.75 per acre; that said timber so cut and removed formed but a small element

of the total value of said lands, which were still covered
with merchantable timber of great size and value, and
said lands are now, since the removal of said timber,
worth at least $14 per acre. Plaintiffs further allege,
as an excuse for not bringing this action more promptly,
that the facts concerning the fraud of Asher and
Hodges, and the mistake on the part of plaintiffs, were
first discovered and learned by plaintiffs within less
than five years before the institution of this suit, and
that they could not, by the use of ordinary diligence,
have discovered their said mistake, or learned of the
fraud, sooner.

It will be noticed that there is no charge in the pe-
tition that Asher and Hodges made any false represen-
tations which misled the plaintiffs, unless it be found in
the charge that Asher and Hodges represented the
agreed price of $1.75 per acre to be a fair and adequate
price for the land, when they, Asher and Hodges, were
well acquainted with the land, and its value, and the
plaintiffs were not acquainted therewith. And, while
the petition alleges that plaintiffs believed Asher and
Hodges when they said $1.75 per acre was a fair and
adequate price, it does not allege that plaintiffs relied
or acted upon those representations. The gravamen of
the charge of fraud is, that Asher and Hodges, knowing
the value of the land to be more than $1.75 per acre, took
advantage of the financial distress of the plaintiffs, who
did not know the real value of their land, by buying it
at the price indicated.

The question, therefore, presented for decision is
this: Does the petition present such a case of fraud as
will authorize a court of equity to rescind the deed, and
place the parties *in statu quo ante?*

In Bispham's Equity, section 475, it is said:

"Canceling an executed conveyance is the exertions
of a most extraordinary power in courts of equity, and
when asked for on any ground, it will not be granted
unless the ground for its exercise most clearly ap-
pears."

Giving the petition the fullest meaning that can be
given to the terms used in the charges of fraud, can it
be said that Asher and Hodges overstepped their legal
or equitable rights? This question was examined at
length in the late case of Hays v. Myers, 139 Ky., 440,

17 L. R. A. (N. S.), 284, where this court, speaking through Judge Carroll, said:

"A person may with perfect honesty and propriety, use for his own advantage, the superior knowledge of property he desires to purchase, that has been acquired by skill, energy, vigilance and other legitimate means. And in the ordinary business and commercial affairs of the world he is not under any legal obligation to disclose to the person he is trading with the reasons that influenced him to desire the property, or his views as to its value, or the sources of information at his disposal. Nor need he disclose the knowledge that he has concerning the circumstances or condition that may depreciate or enhance its value. If any other rule were adopted, it would have a depressing tendency on trade and commerce by removing the incentive to speculation and profit that lies at the foundation of almost every business venture. Every purchaser of land or other property of value buys it because he believes he can make a profit on the investment, or because he needs it in his business, or for some purpose of his own, and he is not required to explain the reasons that induce him to make the purchase, or give to the seller any information concerning the purpose to which he intends to put the property."

The opinion also pointed out the general rule stated in 20 Cyc., 65, as follows:

"Although a prospective purchaser has special knowledge of facts which enhance the value of the property, and the vendor is ignorant of these facts, the purchaser is ordinarily under no duty to disclose them to the vendor, and is not liable in an action of deceit for failure to do so. But, if in such a case he volunteers to convey information which may influence the vendor's conduct in making the sale, he is bound to tell the whole truth; and a fraudulent misrepresentation of a material fact will render him liable. * * * Where the parties deal on equal footing, and the facts in question are equally open to the knowledge of the vendor, the general principles requiring reasonable investigation or inquiry are applicable."

In support of this general rule, the opinion in Hays v. Meyers, quoted from Bowman v. Bates, 2 Bibb., 47; Mills v. Lee, 6 T. B. M., 91; Taylor v. Bradshaw, 6 T. B. M., 145; Williams v. Beasley, 3 J. J. M., 577; Smith v.

Fisher, 5 J. J. M., 188; Akers v. Martin, 110 Ky., 335; and Stewart v. Wyoming Cattle Range Co., 128 U. S., 383. See also, Laidlaw v. Organ, 2 Wheat., 178.

After reviewing these opinions at length, the following general rule was deduced in Hays v. Meyers, as the result of the sounder authorities:

"From these authorities, the rule may be deduced that when the parties are dealing at arm's length, and there is no relation of confidence or trust between them, and no representation or statement made that would have a tendency to deceive or mislead, and there are no special circumstances imposing a duty to speak, mere silence or the non-disclosure of facts in the possession of one of the parties will not amount to such fraud as would authorize a rescission of the contract, or justify a refusal to specifically enforce it. Although in every case the purchaser will not be permitted to rely on his silence as a defense, as there are times and occasions when it is the duty of a person to speak in order that the party he is dealing with may be placed on an equal footing with him as when the knowledge he possesses is not within the fair and reasonable reach of the other, or of such a character that by the exercise of diligence it could be discovered, or it is not open alike to both parties; and if any relation of trust or confidence exists between the parties, or any statement or representation is made that does or might create a wrong impression, or there is a failure to impart information that is asked for, and the knowledge of which would affect the value of the property, or the acts or conduct of one of the parties is reasonably calculated to deceive or mislead the other, or the circumstances surrounding the parties and the transaction are such as to make it the duty to disclose information not within the knowledge of the other—equity will afford relief."

Applying this rule to the facts of the case at bar, it cannot fairly be said that Asher and Hodges have exceeded in any respect their strict legal rights—the substance of the charge being that they procured the execution of the bond and deed for a grossly inadequate consideration, knowing it to be inadequate, while the plaintiffs did not know that fact. But appellants give no reason for their alleged ignorance concerning their own property, and do not claim that Asher and Hodges had any better means of ascertaining the nature and value of

appellants' lands. And, as appellants do not claim that their land lay at a distance from their residences, it may be assumed that they either lived upon it, or near it, or certainly had every opportunity of knowing all about it. No fiduciary relation existed between the parties; on the contrary, they dealt with each other at arm's length, and as strangers. If appellants had been the purchasers instead of sellers of the land, their position might possibly, have been stronger; but, being sellers, and relying upon their own ignorance of their own land, we necessarily have a case of the weakest possible form. Asher and Hodges made no representation other than what is contained in the mere assertion that $1.75 per acre was a fair price. This, however, was not a statement of a fact, but a statement of their opinion upon that subject; and, it is well settled that a mere statement of an opinion, standing by itself, and particularly when made by the buyer, is not such a statement of fact that can be relied upon by the opposing party. 20 Cyc., 17.

In 20 Cyc., 59, the rule as to representations of extrinsic facts affecting value, is thus stated:

"Although statements of the value of the property are ordinarily considered as mere expressions of opinion and are therefore not actionable, the rule is otherwise where the misrepresentation relates to some specific, extrinsic fact which materially affects the value, and in such cases if the fact is one peculiarly within the vendor's knowledge and the statement is made with knowledge of its falsity or what the law regards as the equivalent thereto, and with the intent that the purchaser should act in reliance thereon, which he does to his injury, the representation is actionable. Thus in the sale of farming property, false statements of fact as to the productiveness of the land, such as the amount of hay which it produces, the amount of pasturage it furnishes, the number of horses and cattle it maintains, etc., are actionable within the rule just stated. Statements by a vendor that a third person has offered him a certain sum for the property is a statement of a material fact affecting the value and may form the basis for an action of deceit."

See also, Finlayson v. Finlayson, 17 Or., 347, 3 L. R. A., 801; Converse v. Hood, 149 Mass., 471, 4 L. R. A., 521, and Ripy v. Cronin, 131 Ky., 636, 21 L. R. A. (N.

S.), 305, for a recognition and application of the general rule.

The allegations of the petition do not bring appellants' case within this rule. We are of opinion that the court properly sustained the demurrer to the petition.

2. There is another and additional ground, however, upon which the court may have rested its action in dismissing the petition. It will be remembered that the title bond was executed in April, 1902, and that the deed was made August 26, 1903, while this suit was brought more than seven years and eleven months after the deed was executed, and more than nine years and three months after the bond was executed. No equitable doctrine is better settled than that which requires a plaintiff, who seeks relief from a fraud perpetrated upon him, to promptly make his election between an approval and a disapproval of the fraudulent acts, and to bring his action promptly in case he disapproves them. He will not be allowed to wait and speculate upon the probabilities of the case. Mr. Bispham, in section 260 of his excellent work on equity, says:

"A person who is injured by fraud must be prompt in seeking redress, and he must prosecute his suit with diligence. Laches and negligence are always discountenanced. Nothing can call a court of chancery into activity but conscience, good faith, and reasonable diligence, and when these are wanting the court is passive and does nothing. A court of equity does not encourage stale claims, and a party may lose his right to complain of a fraud, by his delay. * * * In many cases courts of equity have taken the statutes of limitations as standards by which to measure the time properly allowable for the assertion of an equitable right. But this is by analogy only, and chancery tribunals will not hesitate to apply their own doctrines, as to delay, whenever the circumstances of the case require it."

See Alore v. Jewell, 94 U. S., 512.

The same rule is announced in Greenwood v. Fenn, 136 Ills., 146; Dennis v. Jones, 44 N. J. Eq., 513; Coles v. Vanneman, 51 N. J. Eq., 323, and Bedier v. Reaume, 95 Mich., 518.

It is true that section 2515 of the Kentucky Statutes provides that an action for relief on the ground of fraud shall be commenced within five years next after the cause

of action accrued; and that section 2519 further provides that in actions for relief for fraud, the cause of action shall not be deemed to have accrued until the discovery of the fraud, but that no such action shall be brought ten years after the perpetration of the fraud. In applying this statute we have repeatedly held that limitation runs from the time the fraud ought to have been discovered by the exercise of ordinary diligence. But the doctrine that requires a person defrauded to promptly and actively assert his right, and prohibits him from maintaining his action in case he failed to do so, is the doctrine of laches, rather than limitation. If one fails to bring his suit until after the expiration of the period prescribed by the statutes of limitations, he is necessarily barred from maintaining his action; but he may, nevertheless, in certain cases in equity, be barred by laches, if he delays for a period much shorter than the statutory period of limitation, to bring his case promptly, or to prosecute it diligently. The reason for the application of the doctrine of laches to cases of rescission for fraud, is, that the failure of the party defrauded to act promptly is conclusive evidence of his ratification of the contract; the doctrine of laches thus becoming a part of the equitable remedy, in such cases.

In Chase v. Chase, 20 R. I., 203, the doctrine of laches was defined as follows:

"Laches, in legal significance, is not mere delay, but delay that works a disadvantage to another. So long as parties are in the same condition, it matters little whether one presses a right promptly or slowly, within limits allowed by law; but when, knowing his rights, he takes no step to enforce them until the condition of the other party has, in good faith, become so changed that he cannot be restored to his former state, if the rights be then enforced, delay becomes inequitable and operates as estoppel against the assertion of the right. The disadvantage may come from loss of evidence, change of title, intervention of equities, and other causes; but when a court sees negligence on one side and injury therefrom on the other it is a ground for denial of relief."

In 6 Cyc., 302, we have the following text upon that portion of the rule which refers to the change in the relative position of the parties:

"Change in the relative position of the parties resulting from the delay is an element of great weight

with the court in determining whether the delay shall be fatal to the plaintiff's suit. Thus relief has been refused where the property received as consideration by the plaintiff, and which he must return to the defendant as a condition precedent to relief, has depreciated in value, or become worthless; or where the value of the property conveyed and sought to be recovered has increased, especially where the increase is due to permanent improvements placed upon it by the defendant. speculative delay is to be discouraged particularly in the case of property that is subject to great and sudden fluctuations in value.

''The death of important witnesses or the loss or impairment of evidence frequently turns the scales in the defendant's favor. After the lapse of considerable time the evidence will be subjected to a severer scrutiny.''

The foregoing rule was recognized and applied by this court in Potter v. Potter's Receiver, 31 Ky. L. R., 137, 101 S. W., 905, where the creditors of Potter brought an action, in 1902, to set aside certain conveyances of land to Mrs. Potter in 1891, and previously, claiming that they had been bought with Potter's money, and should be subjected to the payment of his debts. In denying them relief, this court said:

''By section 2519, Kentucky Statutes, no action for relief for fraud or mistake can be brought ten years after the time of making the contract or the perpetration of the fraud. All the deeds attacked were made more than ten years before the suit was brought. It is true that limitation is not pleaded. It probably was not pleaded on the idea that the plaintiffs averred that the land was the property of R. G. Potter and was held by N. C. Potter for him, and that therefore the statute did not apply. But, however this may be, a court of equity, where the statute of limitations is not applicable for any reason, will still refuse to enforce stale demands. Where the plaintiff has slept upon his rights, where death has removed some of the parties to the transaction, and time has obscured evidence, a court of equity will refuse relief upon the mere lapse of time and the staleness of the claim for the peace of society. (Helm's Exor. v. Rogers, 81 Ky., 568; Story's Equity, section 1520; McKnight v. Taylor, 1 How., 161.)

''In the case at bar we have not only the lapse of time but other facts of no little force. When these lands were

bought by Mrs. Potter twenty years ago or over, or bought by others who assigned their bids to her, it was uncertain what the future would bring forth for timbered lands in Eastern Kentucky. Mrs. Potter had faith. In the last five or six years there has been a great advance in the price of such lands, and we think that it is a fair conclusion from this record that if this advance had not occurred, this suit would not have been brought. The plaintiffs acquiesced in Mrs. Potter buying and holding these lands and paying the taxes on them as long as the lands were low. They then knew every fact that they know now, or had the means to know them. After acquiescence for years in her ownership of the lands they cannot. be permited when the lands have advanced in price to revoke the election they then made. Their claim is stale, and will. not be enforced by the chancellor.''

See also, Blake v. Wolfe, 105 Ky., 380; Moore v. Hemp's Exor., 24 Ky. L. R., 121, and Clift v. Newell, 31 Ky. L. R., 486, 102 S. W., 832.

Likewise, in the case at bar, there has been a great rise in the price of timbered lands in Leslie County, and other portions of Eastern Kentucky since this sale was made to Asher and Hodges ten years ago, and the plaintiffs either then knew all the material facts they now know, or had the means of knowing them. The plaintiffs waited more than nine years after making this sale, and until after Hodges had died, before they sought to rescind the sale; and the only excuse they give for their unconscionable delay is the technical statement of the petition, that the alleged fraud of Asher and Hodges was first discovered within less than five years before the institution of the action, and that they could not, by the use of ordinary diligence, have discovered their mistake, or the fraud of Asher and Hodges, sooner. Not a single fact is given in explanation of that allegation, or in support of their claim that they did not know, or could not have known these facts sooner. Such gross indifference and delay, in matters of vital importance, did not commend themselves to the conscience of the chancellor who tried this case; neither do they strike us any more favorably.

3. Finally, appellants contend that they are entitled to rescind the sale because their deed conveyed 600 acres of land for which they were not paid, and this re-

sult was brought about by the fraud of Asher and Hodges, and the mistake of appellants. This, if true, is no ground for rescinding the sale of the land fairly made in other respects. The price was uniform for the entire tract; and, if any part of it has not been paid for, appellants have an ample remedy in an action to recover the unpaid balance. There being no allegation of in- solvency laid against appellees, appellants are not en- titled to any unusual or extraordinary remedies.

Judgment affirmed.