# Maryland Casualty Company v. Dickerson, et al.

(Decided February 26, 1926.)

### Appeal from Breckinridge Circuit Court.

1. Limitation of Actions.—Parties cannot contract to shorten period of limitations; it being against public policy.

2. Equity—Estoppel.—Delay alone, though unreasonable, without showing of loss or prejudice, will not work estoppel or authorize plea of laches.

3. Banks and Banking—Bills and Notes—Drawer's Delay in Giving Notice of Alteration of Draft Did Not Discharge Bank Discounting Draft and Party Receiving Proceeds from Liability, Where no Prejudice Resulted.—Bank discounting altered draft, subsequently paid by drawee, and party receiving part of proceeds, failing to show any prejudice by reason of drawer's delay in notifying them of alteration, held not discharged from liability on grounds of laches.

EUGENE R. ATTKISSON and A. R. KINCHELOE for appellant.

LEON P. LEWIS for appellee First State Bank.

W. S. BALL and MOORMAN & WALLS for appellee J. A. Dickerson.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing on original appeal, and affirming on cross-appeal.

The appellant, Maryland Casualty Company, was the insurer of the employer of Jesse Dickerson and as such was paying Dickerson weekly compensation under the Workmen's Compensation Act of California for injuries he had sustained in his employment in that state. Due to mistake, it underpaid him one week twenty-eight cents and to adjust this error, on June 2, 1917, at Los Angeles, California, where Dickerson then was, it drew by its California manager its draft for this amount on the Maryland Trust Company of Baltimore, Maryland, payable to Dickerson. This draft was delivered to Dickerson. Without cashing or banking it, he returned to Kentucky and nothing further was heard of it until May, 1919.

Just after the ninth of this month, he presented this draft to the appellee, First State Bank of Irvington, for discount. In the meantime, the draft had been raised from twenty-eight cents to $780.00 and the dates upon its face as well as upon its reverse side where a receipt was

written out above the place for the indorsing signature were changed to bring the draft up to the contemporary time. The bank declined to discount the draft unless Dickerson procured the appellee, J. A. Dickerson, who was one of its clients, to endorse it. This Dickerson did. The bank then discounted the draft and placed the proceeds to the credit of J. A. Dickerson. He retained $225.00 of the $780.00 and gave the balance to his nephew, who soon left for parts unknown, and though made a party to this suit is only before the court on constructive service.

The bank sent the draft through the usual channels for collection. It finally reached the Maryland Trust Company in Baltimore, Maryland, on May 21, 1919. It paid the draft and charged the same against the appellant's account.

It seems that when the appellant's agents draw drafts to settle claims as here, they send to appellant at its home office in Baltimore, Maryland, at once a memorandum of the drafts so drawn, and such was the procedure in this case. It also appears that when the banking day is over, the trust company makes up a list of the drafts it has honored for appellant during the day and the drafts and this list are delivered to the messenger of appellant sent by it for them. On the succeeding day and as rapidly as may be, these drafts are checked for possible errors against the memoranda forwarded by the agents. This too was done in this case. But, so far as the record shows, it was not until July 17, 1919, that appellant informed the trust company of the fact that this draft had been raised from twenty-eight cents to $780.00, and otherwise altered as above set forth. It was not until October of that year that the appellee bank was informed of the defect in the draft and the appellee J. A. Dickerson did not learn of it until this suit was filed in July, 1920.

This suit was instituted by the appellant against the appellees, First State Bank of Irvington, J. A. Dickerson and Jesse Dickerson, to recover the difference between the draft as drawn and the draft as paid by it. The appellees, bank and J. A. Dickerson, defended on the theory that as appellant had delayed until October, 1919, to inform the appellee bank of the defect in the draft and until July, 1920, to so notify the appellee, J. A. Dickerson, they were discharged from liability on the ground of laches.

The lower court so held except that it gave appellant judgment against J. A. Dickerson for the $225.00 he had received out of this draft. From its judgment, appellant appeals and J. A. Dickerson cross-appeals.

The sole question presented to us by the appellees for decision is whether or not appellant is precluded from maintaining this suit on account of its delay in presenting its claim to appellees.

There is no proof in the record showing in the slightest that either appellee has been hurt or prejudiced in any way by the delay, conceding the same to have been unreasonable. Will delay without prejudice shown, alone excuse the appellees? The doctrine of laches is akin to that of estoppel, which always involves a change of position upon the part of him who seeks to rely upon the estoppel. And it would seem to follow that prejudice or hurt should be shown in order to invoke the doctrine of laches. If mere delay without more could operate as a defense, then, in effect, the statute of limitations would be abridged by the inaction of the parties. We have held in this state that the parties to a contract made in this Commonwealth can not as a part thereof agree to shorten the period of limitations, for such an arrangement is against public policy. Union Central Life Ins. Co. v. Spinks, 119 Ky. 261, 83 S. W. 615; Continental Casualty Co. v. Harrod, 30 Ky. L. Rep. 1117, 100 S. W. 262. How can they then by merely failing to take action do thus indirectly what the law says they cannot do directly? In Culton v. Asher, 149 Ky. 659, 149 S. W. 946, we quoted with approval the following from the case of Chase v. Chase, 20 R. I. 203, 37 Atl. 805:

"In Chase v. Chase, 20 R. I. 203, 37 Atl. 805, the doctrine of laches was defined as follows: 'Laches, in legal significance, is not mere delay, but delay that works a disadvantage to another. So long as parties are in the same condition, it matters little whether one presses a right promptly or slowly within limits allowed by law; but when, knowing his rights, he takes no step to enforce them until the condition of the other party has, in good faith, become so changed that he cannot be restored to his former state, if the rights be then enforced, delay becomes inequitable and operates as estoppel against the assertion of the right. The disadvantage may come from loss of evidence, change of title, intervention of equities,

308 KENTUCKY REPORTS. [Vol. 213.

and other causes; but; when a court sees negligence on one side and injury therefrom on the other, it is a ground for denial of relief.' "

This doctrine was followed and applied in the case of McDowell v. Bauman, 189 Ky. 136, 224 S. W. 641, in which this court said:

"But it is argued that Mueller & Martin delayed the assertion of its claim for nearly three years, and such laches should defeat its claim. Laches in legal significance is not mere delay, but delay that works a disadvantage to another. Culton v. Asher, 149 Ky. 659, 149 S. W. 946. Here it does not appear that any of the parties affected have been prejudiced by the delay. Their positions are the same as they were when the improper payment was first made. Hence the defense of laches is not available either by McDowell or by Bauman."

See also Hazard Bank and Trust Co. v. Morgan, 211 Ky. 134, 277 S. W. 307.

In 25 A. L. R. 177, may be found an exhaustive note on the subject of the effect of delay after the discovery of a forgery of commercial paper, on the part of one having the opportunity and duty to speak in disclosing such forgery to the one who ought to be apprised thereof. The general rule as therein set out and supported by abundant authority cited in this note is, that the delay must be unreasonable and prejudice must result from it. There are some cases that seem to hold that prejudice will be conclusively presumed from mere delay, notably those from Pennsylvania; see McNeely Co. v. Bank of North America, 221 Pa. 588, one of the cases relied upon by the appellees herein. The same may be said of some of the federal cases, as for instance U. S. v. National Exchange Bank, 45 Fed. 163, although the point was not therein discussed, and Leather Mfgrs. National Bank v. Morgan, 117 U. S. 96. Conceding that these cases may not be distinguished, they certainly are not in accord with the principles laid down in our opinions *supra* to the effect that prejudice must follow delay in order to bring into play the doctrine of laches, nor are they in accord with the great weight of authority. The case of Deposit Bank of Georgetown v. Fayette National Bank, 90 Ky. 10, 13 S. W. 339, cited by appellee is not in conflict with these views. That case rests on a different principle from the one under discussion; but in so far as the latter

was considered by the court, the views of the court were thus expressed:

> "These checks were continued to be paid during a period of nearly five months before the forgery was discovered—a fact, it seems to us, that should be decisive of this case; and while the appellant, by its officers, was acting all the while in the best faith, believing that the signature of Burgess was genuine, the length of time these checks were being received for collection, and paid without question, by the appellant, must necessarily fix the responsibility where it was placed by the court below."

It is apparent from the foregoing that court thought that the appellee banks had been lulled into security because of the failure of the appellant bank to promptly discover the forgery involved and that they had paid out over a course of five months a number of checks they would not have honored had they been promptly notified of the forgery. If laches was involved in that case, prejudice was plainly shown.

It being the rule, then, that delay alone, though unreasonable, without a showing of loss or prejudice, will not work an estoppel or authorize the plea of laches, it follows that as the appellees failed to prove any prejudice by reason of delay of appellant in informing them of the alteration of the draft, the lower court was in error in dismissing the appellant's petition. As this is a common law action, the judgment of the lower court is on the original appeal reversed, with instructions to grant appellant a new trial in accordance with this opinion. On the cross-appeal, the judgment is affirmed.