## Harris' Ex'x et al. v. Chesapeake & O. Ry. Co.

March 28, 1947.

Rehearing denied June 6, 1947.

W. D. O'Neal, Special Judge.

Howard & Mayo for appellants.

LeWright Browning and Combs & Combs for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming in part, reversing in part.

This suit in ejectment was filed by the Chesapeake & Ohio Railway Company against Hiram Harris nearly 19 years ago. It sought possession of two parcels in Prestonsburg. One contains .65 of an acre, lying between plaintiff's right of way and the river, and the other .45 of an acre on the other side of the right of way. The defendant pleaded ownership through adverse possession. The case slumbered and slept until a special judge decided it without the intervention of a jury.

The defendant died during the time and the case was revived against his executrix and devisees. The court awarded judgment for the Railway Company for the larger parcel and the defendants the smaller, and denied recovery of rent. We have an appeal and a cross-appeal.

As the Railway Company was building its line up the Big Sandy valley in 1902, its agent, G. B. Wall, acquired title to 155 acres from M. C. Whitaker for its depot and yards at Prestonsburg. Title was taken in the name of Wall, Trustee, and for some undisclosed reason Hiram Harris and three other men each became the beneficial owner of an undivided one-twelfth interest, the Railway owning two-thirds. On March 18, 1903, Wall, as trustee, conveyed to Harris 7.69 acres adjacent to the right of way, which had already been laid off. Harris had sold a right of way through his farm adjacent to this parcel. The Railway Company took title to a certain part of the Whitaker land which embraced the .65 acre involved. Harris moved into a dwelling house on the 7.69 acre parcel conveyed to him. When he erected a fence he reached out into the company's property and took in .45 acres of it. This was about March, 1903. About the same time he began to cultivate the .65 acre on the other side of the track. Occasionally he rented it to others on shares. In 1905 disposition was made of the balance of the Whitaker farm by conveying it to a corporation in which Wall and the four individual beneficiaries of the previous trust became stockholders.

In 1925 the Railway Company's local agent and an engineer called upon Harris in regard to his possession of these two parcels of land, and suggested the execution of a lease. His response was that he had permission of Mr. Wall to use the property and would not discuss the matter with these men, saying that he would talk with Wall, whom he expected in the community soon. It seems that Harris and Wall had collaborated in acquiring the railway right of way and were good friends. The company's representative again called upon Harris in 1928, and received the same response. Wall was then vice president of the Railway Company and never came to Prestonsburg before his death soon thereafter. Defendants' own witnesses tend to sustain the testimony of the Railway Company's representatives, for they say

that Harris was looking after all the Whitaker land for Wall. Other evidence introduced by the defendants was merely of the fact of possession and the general notoriety that the parcels had belonged to Harris; also that on one occasion he made claim of ownership to a section foreman who was about to encroach upon the smaller parcel in some excavation, and to an independent contractor regarding the other one.

It is clear that Harris' original entry was while he was a cotenant of the Railway Company and that the relationship continued for two or three years. So his possession was also that of his cotenant, the Railway Company, and, of course, amicable to it. Fordson Co. v. Vanover, 291 Ky. 447, 164 S. W. 2d 966. When there was an exchange of conveyances in which the Railway Company acquired title to land embracing these parcels, Harris' continuing possession must be presumed to have been under and in subordination to the title of his grantee and he and his successors are estopped by his deed from claiming adversely. Nothing short of an express disclaimer of the relationship and a notorious assertion of title in himself would have been sufficient to change the character of his possession and to render it adverse to the Railway Company. Tippenhauer v. Tippenhauer, 158 Ky. 639, 166 S. W. 225; Williams v. Thomas, 285 Ky. 776, 149 S. W. 2d 525. The only evidence which might be said to sustain positive action was Harris' objection to the Railway section man and the independent contractor. But this evidence was by a discredited witness and was emphatically denied by several of the men who did the work. At any rate, this was not notice to the corporation, for its reception was clearly without the scope of any authority or duty these men had as servants or agents of the Railway Company. Ratliff v. Kentucky & West Virginia Power Co., 232 Ky. 262, 22 S. W. 2d 620.

We are of opinion that on the merits of the case the judgment is erroneous only in awarding the smaller parcel to the appellants instead of to the appellee, Railway Company.

The appellants, Harris' Executrix and Devisees, insist that the judgment adverse to them should be reversed because (1) of laches of the plaintiff in the pro-

secution of the action, and (2) there was no legal revival of the case.

The courts recognize generally that right to a judgment may be lost by laches of a plaintiff in failing to prosecute his case. 19 Am. Jur., Equity, sec. 491; 30 C. J. S., Equity, sec. 115. And this court has recognized that rule in relation to certain claims in equity cases. Walker v. Walker, 253 Ky. 378, 69 S. W. 2d 716. But we have not regarded the plea with much favor, especially in an action at law. Citizens Trust & Guaranty Co. v. Peebles Paving Brick Co., 174 Ky. 439, 192 S. W. 508; Panke v. Louisville Trust Co., 303 Ky. 579, 198 S. W. 2d 313. The reason indicated in Maryland Casualty Co. v. Dickerson, 213 Ky. 305, 280 S. W. 1106, is that in our jurisdiction it is strictly held that prejudice will not be conclusively presumed from unreasonable delay, but it must be shown that the substantial rights of a party were prejudiced by the delay. The only disadvantage or prejudice that may have arisen was from the death of the defendant, Harris. The petition was filed in May, 1928. He died seven and a half years later. Ordinarily, the death of witnesses cannot be held to estop or bar the enforcement of a demand within the statutory period or after the suit has been filed. Vansant's Executrix v. Gardner's Executrix, 240 Ky. 318, 42 S. W. 2d 300, 304. It seems to us that the delay was as much the fault of the defendants as of the plaintiff. There was no sort of responsive plea filed to the petition for nearly a year. By agreement the case was transferred to equity merely "for the judge to try the case without the intervention of a jury." It remained, therefore, an action at common law. The defendants' counsel had become the Judge of the district, and other reasons arose why it was necessary to continue the case from time to time, which was done by agreement. The defendants filed a motion to re-transfer the case for trial in January, 1931, and filed an answer February 3, 1931, nearly three years having elapsed since the suit was filed. The case was pending on the defendants' motion and they made no move to have it acted upon. Harris and his devisees retained possession of the property all the while—40 years and more.

Without further recitation of the record, we may say that there is nothing whatever to show that the

plaintiff was any more responsible for the delay than the defendants. They might at any time have moved for a dismissal for want of prosecution, but they did not. And there is only a presumption of prejudice resulting from delay. It is of importance also that the defendants had pending a counterclaim involving the whole matter, and they were as dilatory in prosecuting it as the plaintiff in pursuing its claim. We are of opinion that the argument of laches is not supported by the record.

Not long after the death of the defendant, Hiram Harris, it was suggested of record. Civil Code of Practice, sec. 500. Within a year the plaintiff filed a petition for revivor against his executrix and devisees. Civil Code of Practice, sec. 508. Summons was issued and duly served. The style of the case was not shown on the face of the summons, but it was shown on the back of it. After the expiration of one year, an alias summons was issued without order of court. This showed the style of the case on its face. The court sustained the defendants' motion to quash the first summons, but overruled their motion to quash the second one. It makes no difference whether the court erred in overruling the first summons, as the appellee contends. If the first summons was void and the ruling proper, then the alias was properly issued without an order of court. If the first was good, the issuance of a second one, of course, was a nullity and of no effect. In either event, the plaintiff could not be prejudiced by the failure of the Clerk to perform his ministerial duty and issue a summons in proper form so far as the tolling of the one year limitation is concerned. The filing of the petition for a revivor and the issuance of process without qualification or restriction by the plaintiff are to be regarded in this connection as the commencement of an action so far as avoiding the bar of limitations upon a revivor of the action. Civil Code of Practice, sec. 39; KRS 413.250; Louisville & N. R. Co. v. Little, 264 Ky. 579, 95 S. W. 2d 253. Therefore, the contention of the appellants that the judgment is void because of failure to revive the case against them in accordance with the law cannot be allowed.

The Railway Company submits it is entitled to recover its claim of a reasonable rent for the use of the

846

property. There was some evidence to the effect that the reasonable rental value was $30 a year. To overcome the plea of adverse possession, the plaintiff proved that Harris was claiming to be in possession by the express permission of its own officer. It did not undertake to prove the possession to be otherwise than by permission or contract. And it did not show that that permission called for the payment of rent. We conclude, therefore, that the Company was not entitled to any recovery on this account.

The judgment is affirmed on the original appeal of Harris' Executrix and Devisees and is reversed on the cross-appeal of the Railway Company.