Shaw C. J.
delivered the opinion of the Court. The first question arising in this cause is, whether the depositions of Jackson and others, under the circumstances, ought to have been admitted as competent. These were generally persons, of whom Martin had ‘made similar purchases, of like articles, about the same time, and under circumstances tending to show that he was insolvent and had no reasonable expectation of paying for the merchandise according to his contract.
The objection to this evidence is placed on two grounds, first, that these persons having similar claims of their own, some of which are pending here, they have an interest in establishing the fraud which they are called to prove ; and secondly, that the transactions being res inter alios, have no tendency to prove the fact in issue in this particular case.
But in our opinion, the objection cannot be sustained upon either ground. As to the first, it is quite clear, that the verdict and judgment in this case would not be evidence in either of theirs ; that their interest is in the question and subject matter and not in the event of the suit, and therefore that the objection, such as it is, goes to the credit and not to the competency of the witnesses. As to the other objection, we think this evidence has a direct and material bearing upon the fact in issue. It tends to show, that at the time this ostensible purchase was made, Martin was insolvent, that he knew he was insolvent, that he had no reasonable ground to believe that he could pay the cash and did not expect or intend to pay the cash for the merchandise which he purchased, and so that he obtained the goods by false pretences. The fact of insolvency, of his knowledge of his insolvency, and that he had no expectation or intention of paying for the corn in question, is a material fact and the principal fact in controversy on which this case rests, and is material to the issue. The evidence bears upon the question quo animo, the intent, the fraudulent purpose.[1]
*317 2. It is next contended on the part of the plaintiffs, that no property passed by the fraudulent purchase of Martin, from the plaintiffs to him, so as to enable him to make a title to the 'defendants.
The evidence clearly shows that there was a contract of sale and an actual delivery of the goods, by their being placed on board a vessel, pursuant to his order ; and this delivery was unconditional, unless there was an implied condition arising from the usage of the trade that the delivery was to be considered revocable, unless the corn should be paid for, pursu ant to the contract and to such usage. This contract and delivery were sufficient in law to vest the property in Martin, and make a good title, if not tainted by fraud. But being tainted by fraud, as between the immediate parties, the sale was voidable, and the vendors might avoid it and reclaim their property. But it depended upon them to avoid it or not, at their election. They might treat the sale as a nullity and reclaim their goods ; or affirm it and claim the price. And cases may be imagined, where the vendor, notwithstanding such fraud, practised on him, might, in consequence of obtaining security, by attachment or otherwise, prefer to affirm the sale. The consequence therefore is, that such sale is voidable, but not absolutely void. The consent of the vendor is given to the transfer, but that consent being induced by false and fraudulent representations, it is contrary to justice and right, that the vendor should suffer by it, or that the fraudulent purchaser should avail himself of it ; and upon this ground, and for the benefit of the vendor alone, the law allows him to avoid it.
The difference between the case of property thus obtained, and' property obtained by felony, is obvious. In the latter case, no right either of property or possession is acquired and the felon can convey none.
We take the rule to be well settled, that where there is a contract of sale, and an actual delivery pursuant to it, a title *318 to the property passes, but voidable and defeasible as between the vendor and vendee, if obtained by false and fraudulent representations. The vendor therefore can reclaim his property as against the vendee, or any other person claiming under him and standing upon his title, but not against a bond fide purchaser without notice of the fraud. The ground of exception in favor of the latter is, that he purchased of one having a possession under a contract of sale, and with a title to the property, though defeasible and voidable on the ground of fraud ; but as the second purchaser takes without fraud and without notice of the fraud of the first purchaser, he takes a title freed from the taint of fraud. Parker v. Patrick, 5 T. R. 175. The same rule holds in regard to real estate. Somes v. Brewer, 2 Pick. 184.
3. Another ground is, that the plaintiffs had a right to stop in transitu, and exercised that right, in sufficient season, by demanding the goods of the master on his arrival at Boston, and before the goods reached the hands of the defendants.
The right of stoppage in transitu is nothing more than an extension of the right of lien, which by the common law the vendor has upon the goods for the price, originally allowed in equity and subsequently adopted as a rule of law. By a bargain and sale without delivery, the property vests in the vendee; but where, by the terms of sale, the price is to be paid on delivery, the vendor has a right to retain the goods till payment is made, and this right is strictly a lien, a right to detain and hold the goods of another as security for the payment of some debt, or performance of some duty. But when the vendor and vendee are at some distance from each other, and the goods are on their way from the vendor to the vendee, or to the place by him appointed for their delivery, if the vendee become insolvent and the vendor can repossess himself of the goods before they have reached the hands of the vendee or the place of destination, he has a right so to do, and thereby regain his lien. This however does not rescind the contract, but only restores the vendor’s lien; and it can only take place when the property has vested in the vendee.[1]
*319 Without considering what would have been the effect of the oill of lading in defeating the vendor’s right to stop in transitu, had the place of destination been Boston, we are of opinion that upon another ground, the right did not exist in the present case.
What does or does not constitute a journey’s end, and the termination of the transit, may, in many cases, be a question of difficulty and has often been a subject of discussion. But here we think it very clear, that a delivery of the corn on board of a vessel appointed by the vendee to receive it, not for the purpose of transportation to him, or to a place appointed by him to be delivered there for his use, but to be shipped by such vessel, in his name, from his own place of residence and business to a third person, was a termination of the transit, and the right of the vendor to stop in transitu was at an end. Noble v. Adams, 7 Taunt. 59.[1]
4. It is contended that the defendants were not purchasers for a valuable consideration and bona fide, so as to be entitled to the benefit of the exception in their favor. But we are of opinion that they do stand in that relation, and are entitled to the benefit of it. It appears that they advanced, either in cash or by the acceptance of Martin’s drafts in favor of third persons, to an amount equal to the value of the goods, and that after having been furnished with bill of lading and invoice and in the ordinary course of business. The ground upon which the plaintiffs rely is, that at the time the bill of lading was signed, the corn was not on board, and in fact, as appears by a comparison of dates, had not been purchased of the plaintiffs. This was undoubtedly irregular; and if done by collusion between Martin and the master to enable the former to get money or credit on the bill of lading, was a gross fraud upon any person deceived by it. But it is not perceived how *320 the plaintiffs can avail themselves of this, supposing it to lie a fraud. A bill of lading is a contract of carriage for hire, by which the master engages to deliver the goods to the shipper or his order, and so is quasi negotiable. It operates by way of estoppel against the master and also against the shipper and indorser.
The bill of lading acknowledges the goods to be on board, and regularly the goods ought to be on board before the bill of lading is signed. But if, through inadvertence or otherwise, the bill of lading is signed before the goods are on board, upon the faith and assurance that they are at hand, as if they are received on the wharf ready to be shipped, or in the shipowner’s warehouse, or in the shipper’s own warehouse, at hand and ready, and afterwards they are placed on board, as and for the goods embraced in the bill of lading, we think, as against the shipper and master, the bill of lading will operate on these goods by way of relation and by estoppel.
It is asked, how long after the signature of the bill of lading property may be delivered on board, so as to be bound by it and become the subject on which it shall operate. We think, at any time whilst the vessel is taking in her cargo for that voyage, as described in the bill of lading, and before she sails upon it. Here there was a time, when the bill of lading might have been properly signed by the master, namely, after the corn was delivered and before the vessel sailed; and it is admitted that this was received as and for the corn mentioned in the bill of lading. And it can make no difference to the plaintiffs, whether the bill of lading was signed after this shipment, or a few days before, in anticipation of such shipment. Supposing, then, that when the goods were shipped, as against the shipper and master the bill of lading operated upon this property and would have bound the master to deliver it to the consignee, as we think it would, then by the uniform course and practice of merchants, the bill of lading represents the property, and any bond fide title for valuable consideration. obtained by a transmission or negotiation of the bill of lading, gives as valid and effectual a title to the goods, as could be obtained by an actual delivery of the goods them *321 selves.' The defendants have shown such a title, and there' fore the order of the Court must be

Judgment on the verdict.

 See Bottomly v. United States, 1 Story R. 135; Bradford v. Boylston F. *317 M. Ins. Co. 11 Pick. 162; Rex v. Hough, 1 Russ. & Ry. 120; Rex v. Bull, ibid. 132; Rex v. Dunn, 1 Mood. Cr. Cas. 146; Rex v. Hunt, 3 Barn. & Aid. 566; Phillips & Amos on Evi. (8th Lond. ed.) 494.

 See Clay v. Harrison, 10 Bam. & Cressw. 99; James v. Griffin, 2 Mees. *319 & Welsby, 632; Edwards v. Brewer, ibid. 379; People v. Haynes, 14 Wend. 566.

 See Bolin v. Huffnagle, 1 Rawle, 9; Allen v. Gripper, 2 Crompt. & Jervis, 218; Foster v. Frampton, 6 Barn. & Cressw. 107; Townley v. Crump, 5 Nev. & Mann. 606; Buckley v. Furniss, 15 Wend. 137; Newhall v. Vargas, 1 Shepl. 93

 See Mien v. Williams, ante, 297.-