## Head, et al. v. Oglesby.

(Decided May 15, 1917.)

### Appeal from Oldham Circuit Court.

1. Corporations—Subscription to Stock—Defense.—A person purchasing stock in a corporation, and who executes his note therefor, and who is ignorant of the condition of the corporation, may rely on material and reasonable representations made to him by the seller, and is not obliged to seek information from other sources or make any effort to verify the truth of the representations made by the seller.

2. Corporations—Contract to Purchase Stock—Rescission.—Where one purchasing stock in a corporation upon false representations that the stock was worth more than what it was offered for, and that the corporation was solvent, that the seller was representing the corporation in selling its treasury stock, and not a speculator in such stock, and such representations were known by the seller

to be false and not known to be so by the purchaser, the facts being that the corporation was wholly insolvent, that the stock was worthless and the seller was not the agent of the company but a speculator in stock, may have a rescission of the contract and a cancellation of the notes executed for the stock.

3.  Corporations—Subscription to Stock—Action to Cancel Note.—One who enters into a compact or agreement with the seller of corporate stock to share the profits that may be realized from the sale of it is chargeable with fraudulent representations made by the seller in the sale of such stock in pursuance to such agreement, and if the one so agreeing to share in the profits becomes the owner of the note executed by the purchaser in payment of the stock it may be cancelled in his hands in a suit brought by the purchaser for that purpose.

4.  Corporations—Subscription to Stock—Cancellation—Rescission.— While the general rule is that to entitle one to the equitable relief of rescission or cancellation he must promptly proceed, after discovering the facts constituting the fraud, this is not confined only to the fraudulent representations made to the purchaser by the actual seller, but to any other facts concerning a third party showing that he was jointly interested with the seller in effecting the sale, and who became the owner of the notes executed for the purchase price.  Although the facts constituting the fraud perpetrated by the seller may have been known a long while, yet if the facts showing that the defendant was a party to it were of recent discovery, a suit against him for cancellation or rescission will be in time.

5.  Corporations—Subscription to Stock—Cancellation.—A suit for cancellation of a note for fraud in its procurement may be maintained against the holder of the note if he was a party to the fraud, whether the payee therein or not, and regardless of the fact that the note is past due, and the fact that the maker may defend a suit on the note based upon the fraud in its procurement will not deprive him of his remedy for cancellation.  This, because suit to recover on the note might be postponed for such a length of time as to materially impair the opportunity of the maker to establish the fraud through the loss or destruction of his evidence of that fact.

6.  Corporations—Subscription to Stock—Action to Cancel Note.—In a suit to cancel a note because of fraud in its procurement, evidence of similar contemporaneous transactions with others in the same vicinity whereby the same character of fraud was perpetrated may be shown as evidence of the general fraudulent intent and purpose in the particular method of dealing.

EDWARDS, OGDEN & PEAK, D. H. FRENCH and J. T. YAGER for appellants.

BURNETT, BATSON & CAREY, JOHN W. RAY and H. J. McFARLAN for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

This suit in equity was brought by the appellee (plaintiff) against P. S. Head, P. E. Told, and S. C. Walker, appellants and defendants below, seeking to cancel two notes held by the defendant, Head, and executed by the plaintiff to S. C. Walker. One of the notes is for $3,500.00, and was executed on May 14, 1913, due eighteen months thereafter, with interest after maturity; and the other is for $2,100.00, executed by plaintiff to Walker on May 21, 1913, running for the same length of time and drawing the same interest.

The general ground of complaint for the relief asked is that the defendants entered into a conspiracy among themselves for the purpose of cheating and defrauding the plaintiff by selling to him four hundred shares of the capital stock of the Southern National Life Insurance Company, a Kentucky corporation, organized for the purpose of conducting a life insurance business, and that in pursuance to said conspiracy they did, by misrepresentation and fraud and wrongful schemes and contrivances deceive and procure the plaintiff to purchase that number of shares when they were wholly worthless at the time, and which fact the defendants knew and the plaintiff did not know.

A demurrer filed to the petition was overruled, to which exceptions were taken, and the defendants then filed a joint answer, the substance of which is a general denial of the averments of the petition. After the evidence had been taken, but before submission, the defendant Head, who was the owner of the notes, filed in the same court an ordinary petition against the plaintiff, seeking to recover from him the amount of the notes, which petition was controverted of record, and that suit, by an order of court, was consolidated with appellee's equity suit, and upon submission of the consolidated cases the ordinary petition of the defendant Head was dismissed, but the court granted appellee (plaintiff in the equity case) the relief which he sought and cancelled the notes, and to reverse the judgment in the consolidated cases the defendants in the equity suit prosecute this appeal.

Many objections are raised and urged upon us calling in question the correctness of the judgment appealed from, which may be classified thus: (1) Error in over-

ruling the demurrer filed to the petition. (2) That the plaintiff is not entitled to the relief sought by him because (a) he was guilty of such laches as would deprive him of the equitable remedy of cancellation or rescission, and (b) that he had a complete and adequate remedy at law which he could use as a defense to a suit on the notes. (3) That the evidence fails to establish the averments of the petition so as to justify equity in cancelling the notes or rescinding the contract under which they were executed.

Considering the points raised in the order named, the substance of the averments of the petition is that the defendants entered into a conspiracy for the purpose of cheating and defrauding the plaintiff by selling to him the stock, and that in pursuance thereto the defendants Told and Walker visited his house at which he was living upon a farm in Oldham county, and represented to him that Walker was the agent of the Southern National Life Insurance Company and then engaged in selling the treasury stock of that company for it; that they represented to him that the company was in a flourishing and prosperous condition, that the stock was worth $14.00 per share, its par value being $5.00 per share, and that there was but very little of it to be had at that price, and that unless plaintiff purchased immediately he would lose the opportunity of making a great bargain; that there was a movement on foot to consolidate that company with the Inter-Southern Life Insurance Company, which they stated that they knew would soon be accomplished, and that when done the stock which they were proposing to sell would greatly and immediately advance; that they referred the plaintiff to the defendant Head, who was a prominent banker at LaGrange, Kentucky, and one of the most influential men financially in the county of Oldham, and requested plaintiff to call Head over the 'phone, which he did, and Head told him that the stock was worth that price and recommended that plaintiff buy it, that it was a bargain which plaintiff would lose if he did not purchase the stock; that plaintiff believed and relied upon the statements of all three defendants, which statements were at the time false, and known by the defendants to be false, but were not known to be false by the plaintiff, and so believing and relying upon their truth, he signed the application for the stock and executed his notes therefor; that the truth was and is that there had been an agree-

ment prior to that time between Head, Told and Walker that they should sell stock to any of the solvent farmers throughout Oldham county whose names were upon a list, among which was that of plaintiff, and that Head would furnish the money to procure the stock by discounting the notes executed for it and with a sufficiency of their proceeds the stock could be purchased to supply those to whom sales might be made, and that the three should share equally the profits of the venture; that plaintiff was thus induced to purchase the stock at $14.00 per share when it cost the defendants between $5.00 and $6.00 per share, and was not even worth that sum at the time. It was also alleged in substance that in furtherance of the conspiracy and agreement to defraud the plaintiff he was induced to agree and consent that the Southern National Life Insurance Company should consolidate with the Inter-Southern Life Insurance Company, and but for which he would not have so agreed, and that he did not discover the facts showing the fraudulent schemes and conspiracy of all of the defendants until within about ninety days before filing his suit.

Under these allegations it is difficult for us to see how it can be seriously insisted that the petition fails to state grounds for equitable relief. The strongest cases relied upon by counsel for appellants, in support of their contention as to the insufficiency of the petition, are Gray v. Gregory, 140 Ky. 266; Pieratt v. Young, 20 Ky. L. R. 1815, and Central Life Insurance Company v. Taylor, 164 Ky. 844, but only a cursory examination of those cases will show wherein they are not applicable here.

In the Pieratt case the pleading adjudged to be insufficient was a petition against the directors of a bank seeking to recover from them money deposited in the bank by plaintiff upon the faith of a statement which the *bank* had issued. The petition failed to allege that the directors knew that the statement issued by the bank was false, or that the directors caused it to be made for the purpose of deceiving the public, including the plaintiff. There were other defective allegations as against the directors individually, and the court very properly sustained the demurrer filed to the petition.

In the Gregory case the suit was brought to recover damages for the fraudulent interfering with and breaking off a trade for the sale of land. In the petition the wrong attempted to be charged was that defendant

"wrongfully, wantonly, fraudulently and without the solicitation of anyone, interfered in said trade," etc. It was not anywhere shown what particular or specific acts the defendant did which plaintiff claimed constituted the legal wrong sued for. Under the most elementary rules of pleading it was determined that the petition contained only the conclusions of the pleader and no facts from which a cause of action arose in his favor, and the court properly sustained the demurrer to the petition, which was affirmed by this court.

In the Taylor case the suit was based on false statements and representations, but it was not alleged in what way such representations and statements were false, nor wherein the falsity of the statements existed. Clearly, these cases can have no relevancy to the facts of the instant case, nor do the pleadings in those cases bear any resemblance to the one-objected to in this case. All of the matters which the court adjudged to be essential in those cases, and which were wanting, are found to exist here. The court, therefore, properly overruled the demurrer to the petition.

In support of the objection embodied in (2), subdivision (a), urged for reversal, we are referred to the Taylor case, *supra*, and to cases therein cited. The rule against laches and requiring prompt action on the part of plaintiff to entitle him to maintain suit for cancellation or rescission is thus stated in that case:

"Where one sues in equity to obtain the rescission of a contract, basing his claim to the relief sought upon the ground of fraud inducing the execution of the contract, he must act promptly in making his election of remedies, for if he fails to act promptly upon the discovery of the fraud, he loses his right to rescission in equity, and his only remedy then is an action for damages for deceit. Culton v. Asher, 149 Ky. 659; Buford v. Brown, 6 B. M. 553."

To this rule we strictly adhere, and have no quarrel to make with it. It is everywhere recognized, and is founded upon equitable and sound principles, but it has no application to the facts of this case. The "discovery of the fraud," after which the plaintiff must act promptly, as required by that rule, means the fraud of the particular defendant against whom he subsequently proceeds for a cancellation or rescission. In this case the plaintiff discovered the fraud practiced upon him by

Walker and Told at the time they sold to him the stock within a short time thereafter, but he did not discover that Head, the holder of his notes, was a partner in that transaction, and a participant in the fraud, until within a short while before he filed his suit. It would have availed the plaintiff nothing to have filed his suit against either Walker, Told or the insurance company, because neither of them held his notes so that he could procure their cancellation. They were held by Head and were obtained by him before maturity, so that plaintiff was under the impression that he was an innocent purchaser of those notes, but after discovering that the one who held his notes was also a conspirator, and one of the partners in the profits reaped by the fraud practiced upon plaintiff, he with reasonable promptness filed his suit, and he can not be charged with laches in not sooner doing so. Pomeroy's Equity Jurisprudence, vol. 2, sec. 917.

Considering now objection (b) that plaintiff had an adequate remedy at law, the authorities are not altogether in unison upon this subject. In some jurisdictions it is held that unless the suit for rescission or cancellation is filed before the notes mature, and while in the hands of the original payee, it cannot be maintained. While others permit its prosecution, although the notes sought to be cancelled are past due and still in the hands of the one guilty of the fraud justifying their cancellation. This is upon the ground that the holder might delay bringing suit for such a length of time that plaintiff would experience difficulty in proving the fraud by which they were procured. The rule announced by the latter class of cases is stated in Pomeroy's Equity Jurisprudence, vol. 6, sec. 685, in treating of equitable remedies, thus:

"On the other hand, it is held, in a considerable group of cases, that the danger of loss of evidence in support of the defense, through the intentional delay of the holder of the instrument in bringing suit thereon, is sufficient to warrant the exercise of the jurisdiction; and this, too, even where the holder of the instrument has already brought suit at law upon it, since the prosecution of such suit is within his control, and may be delayed or withdrawn, and another brought at a time when an unconscionable advantage may be taken."

Among the cases cited as supporting this rule are Martin v. Graves, 5 Allen 601; Chemical Ins. Co. v. McLoon, 14 Allen 351; Fuller v. Percival, 126 Mass. 381

(promissory note overdue and obtained by fraud); Ritterhoff v. Puget Sound National Bank, 79 Pac. R. 601; Sharon v. Hill, 20 Federal R. 1; Schmidt v. West, 104 Fed. 272; Fitzmaurice v. Mosier, 116 Ind. 363, 9 Amer. St. R. 854; John Hancock M. L. Ins. Co. v. Dick, 114 Mich. 337, 43 L. R. A. 566, and others.

We think the reason stated by Mr. Pomeroy and the authorities referred to permitting the employment of the remedy for cancellation or rescission under the circumstances therein stated, and which exist here, is well founded, and meets with our approval.

Turning now to objection (3) urged against the judgment, it may be said that the testimony is really stronger than the allegations of the petition. Briefly, it is that Told was the local agent at LaGrange for the Southern National Life Insurance Company, and had, a short while before, issued to the plaintiff a policy in that company insuring his life for the sum of $10,000.00. Told was acquainted with the farmers of Oldham county, including plaintiff. Walker was an experienced seller of the stock of that company, having been engaged in it in other parts of the country since perhaps its organization. The company was practically, if not entirely, insolvent. The insurance department of the state, in November preceding the sale of the stock, had investigated the financial condition of the company, and found it to be as stated. The company, as well as its agents, including Walker, had been informed of this fact, and of the further fact that unless the company procured additional assets to file with the insurance department of the state, in order to protect its reserve, that it would have to cease doing business. Head was a friend of the plaintiff, and his banker. He was one of the leading financiers of Oldham county, and enjoyed the implicit confidence of the people therein, including the plaintiff. Under these circumstances Walker appeared in LaGrange, and he, Told and Head got together and agreed that the first two would canvass the county for the purpose of selling the stock, and that Head would discount the notes executed by the purchasers at a large discount and should share equally with the other two in the profits made in the venture. The representations were made to plaintiff by Walker and Told, as alleged in his petition, and after communicating with Head over the telephone the sale was effected and plaintiff signed the application for the stock and his notes, the one for

$3,500.00 being for 250 shares at $14.00 per share, and the one for $2,100.00 being for 150 shares at the same price per share. The notes were discounted by Head at a rate of discount as much as or larger than ten per cent., and the $3,500.00 note he honored and paid the draft drawn on him by Walker for $1,500.00, which was the cost to the three of the first 250 shares sold to plaintiff, and in addition he paid to Walker and Told $450.00 each as their part of the profits of this particular sale. At that time Head was himself the owner of stock in the insurance company and knew of its value, or rather what it could be purchased for. He knew that plaintiff was paying as much as or more than $8.00 per share in excess of what it would cost the three.

After the sale of the first 250 shares to plaintiff, Head examined the records of the Oldham county court and found that plaintiff was worth much more property than he had theretofore suspected. It was because of this that the second successful effort was made, five days after the sale, to sell him the additional 150 shares upon the same terms as the first sale, and Head handled the note executed at that sale in the same manner as he did the first note of $3,500.00.

When plaintiff voted his stock in favor of consolidating the Southern National Life Insurance Company with the Inter-Southern Life Insurance Company, he went to the meeting of the stockholders with Head, who informed him that it would be all right, and that they would eventually make money, or this in substance. Throughout the record it appears that Head and Walker possessed the brains that hatched and engineered the scheme. Told was but an assistant in setting the net for the final drive, which, in due time, was made, and plaintiff was caught within its meshes. According to our view, the record presents a clear case for the interference of a court of equity. We are so much convinced of this that we believe we can truthfully say that if the facts of this case do not justify a cancellation of the notes, there could scarcely be found one which would justify it. The bargain was not only an unconscionable one, but the transaction throughout is reeking with deceit, fraud, and misplaced confidence, and we have no hesitancy in concluding that the court rightfully rescinded the contract and cancelled the notes.

It is insisted by appellant's counsel that plaintiff cannot complain and is not in an attitude to seek relief in the courts because he failed to exercise vigilance or to make the necessary inquiry in order to ascertain the truth of the representations made to him and thereby protect himself, and we are referred to the cases of German National Bank v. Nagel, 26 Ky. Law Reporter 748, and similar cases, in support of this contention. The facts in this case are entirely dissimilar from the facts of those cases. Here the plaintiff was away from any sources of information concerning the value of the stock, and his vigilance was disarmed and his investigation paralyzed by the defendants Walker and Told referring him to Head, with whom he did communicate, but which, as it developed, was a part and parcel of the scheme to effectuate the fraud. Defendants are not in condition to complain, under the circumstances, of plaintiff's failure to make further investigation. Besides, the case of Southern Insurance Co. v. Milligan, 154 Ky. 216, is one containing very similar facts to those we have here. If there is any difference, they are stronger for the present plaintiff, and this court upheld the right of the purchaser of the stock to obtain a cancellation of the notes executed for the price, in a suit brought for that purpose. The case is a thoroughly considered one, but we will not encumber this opinion with excerpts therefrom.

Plaintiff offered to introduce the testimony of others to whom similar representations were made under the same kind of an agreement between the three appellants here, and which resulted in each instance in the sale of stock to the witnesses. The court declined to hear that testimony, but we think improperly so. The purpose of it was not to show that misrepresentations were made to plaintiff, but to show the general intent of the appellants in entering into the compact for the purpose of selling the stock and to show that that intent was a fraudulent one, and that the purpose and object of it was to reap profit for the conspirators at the expense of their duped victims. We think this evidence was admissible under the following authorities: L. & N. R. R. Co. v. Berry, 9 Ky. Law Rep. 683; Jones on Evidence, 2nd Ed., sec. 142; Wigmore on Evidence, secs. 302-304; Penn. Mutual Life Ins. Co. v. M. L. B. & T. Co., 72 Fed. R. 422; Rowley v. Bigelow, 29 Mass. 307, and Darling v. Klock, 59 N. E. (N. Y.) 1121.

These authorities proceed upon the idea that similar contemporaneous transactions are evidence of the defendants' intent and motive, and, as stated in Jones on Evidence, "It has often been held in civil cases that, on the question of intent to defraud, other similar acts or representations at about the same time as the one in question are relevant."

Plaintiff deposited the stock which he purchased as collateral to his notes with Head, who held it. This collateral was substituted by the stock in the Inter-Southern Life Insurance Company after the consolidation was made, which was done with the consent of Head, and the court in its judgment directed that although the notes were cancelled that he should hold the collateral. As Head not only agreed to the consolidation, followed by the exchange of stock, but solicited plaintiff to agree to and participate in it, he is in no condition to complain of plaintiff's inability to restore to him the identical stock which plaintiff purchased.

Upon the whole case, we find no error in the judgment, and it is affirmed.