## National Life Co. et al. v. Wilkerson's Adm'r.

(Decided May 25, 1934.)

C. W. BENNETT for appellants.
WITHERS & LISMAN for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

On October 23, 1919, the National Life Association of Des Moines, Iowa, issued its policy to Rufus T. Wilkerson, insuring his life in the sum of $2,000; the insurance being payable to his estate. The policy was issued on the assessment plan and had no reserve or loan value. The National Life Association has been succeeded by the appellant, National Life Company. The initial assessment paid by Wilkerson for his insurance was $44.74, and the annual assessments he appears to have paid up to the summer of 1930 were in like amount. Towards the end of this period, the National Life Association and its successor, the National Life Company, ceased to write insurance on the assessment plan, due, as it seems, to a change in the laws of the state of Iowa. The company then sent out into the field a number of agents to visit its policyholders who held these assessment policies for the purpose of informing these policyholders that the writing of insurance on the assessment plan had

ceased, and that therefore necessarily as the policyholders insured under the assessment plan died off, no new ones being added, the burden of carrying the assessment policies would very materially increase as the years went on. Wade English, one of these agents, visited Wilkerson in June, 1930. As a result of several interviews with Wilkerson, the latter surrendered his assessment policy and received in lieu thereof what is known in this record as a "Certificate Relating to Old Age Disability, Pure Endowment Benefit," hereinafter called the "endowment certificate," and which provided that in consideration of the surrender of the assessment policy, the company would pay to Wilkerson the sum of $294.26 on the 23d day of October, 1944, if he were then living. At the same time, Wilkerson took out a 21-payment life policy in the National Life Company in the sum of $1,000, the premium to be paid quarterly at the rate of $20.74, or a total premium for the year of $82.96. He paid the first premium on June 23, 1930, when the policy was issued. He failed to pay the premium due on the 23d of September, 1930, and the policy lapsed. The record discloses that the motive which actuated Wilkerson in allowing this policy to lapse was that he had procured life insurance in another company in the principal sum of $1,000, at a cheaper rate than that called for by the policy issued to him by the appellant in the preceding June. Wilkerson died in March, 1931. His personal representative collected the last policy of insurance, to which reference has been made, and then undertook to collect from the appellant the policy issued in June, 1930, as well as the $294.26 covered by the endowment certificate. The personal representative was unsuccessful in these efforts as the June policy had lapsed and the endowment certificate was payble not until 1944, and then only in the event Wilkerson was living. Thereupon this suit was brought seeking to reinstate the assessment policy surrendered in June, 1930, and after such reinstatement to recover its amount of $2,000, less an assessment of $44.74, which the petition alleged was all that was levied against this policy in the following October when the assessments were due. As grounds for this suit, it was alleged that the surrender of the assessment policy had been procured by fraud in that, first, in order to induce the insured to surrender his assessment policy it was represented to him that the assessments thereon would thereafter materially increase and that the next assessment he would have to pay

would be $165, and, secondly, it was represented to him that if he surrendered his policy he would receive an endowment certificate for $294.26, payable to him in 1944 if he were then living, but payable to his estate at all events if he died before that time; both of these representations being false, and the insured acting in reliance upon them. To support these allegations, which were denied by the company, the administrator of Wilkerson introduced several witnesses who testified that they had heard English state to the insured that if he surrendered his policy he would receive a certificate requiring the company to pay him $294.26 in 1944 if he were then living, and which would be payable to his estate if he died before that time. The administrator also proved by witnesses that like representations were made by these agents to other assessment policyholders in the neighborhood to induce them to surrender their policies. The administrator also introduced several witnesses who testified that the agent had represented to the deceased that if he retained his assessment policies, his assessments would materially increase and the one due on the next assessment date would be $165. They also introduced witnesses who had policies in this same assessment class who testified that the assessments in the following October were not advanced over what they had theretofore been. The appellant introduced its agent, who denied that he told Wilkerson that his endowment certificate would be payable to his estate if he died prior to 1944. It produced the application of Wilkerson to exchange his assessment policy for this endowment certificate which Wilkerson had signed, and which plainly stated that the endowment was not to be paid until 1944 and then only if Wilkerson were alive. The company also established that Wilkerson receive his endowment certificate, which also plainly set out this fact, shortly after its issuance. So far as the record shows, Wilkerson retained this certificate until his death and never made any complaint or effort to set the transaction aside because of having been defrauded or for any other reason. English admitted that he told Wilkerson that it would not be long before his assessments would materially increase, but denied that he said it would jump in the following October, or that it would then be $165. He stated that in June no one could say what the assessment would be in October, for not until then could the losses for the year be determined. His explanation of the figure of $165 being mentioned in the conversation

he had with Wilkerson is this: That Wilkerson at first wished to take out a $2,000 policy instead of the $1,000 policy he did take out in June, 1930. It will be remembered that the quarterly payments on this $1,000 policy came to $82.06 for the year, and a $2,000 policy, the premiums of which were paid in the same fashion, would have come to $165.92. He says that the witnesses who testified that he told Wilkerson that his next assessment would be $165 were mistaken and that they mistook what he told Wilkerson about what the premium would be on a $2,000 policy for what the next assessment on the old policy would be. The lower court granted the appellee the relief sought in his petition, and from the judgment thus entered, this appeal is prosecuted.

This being an action for rescission, that is, the setting aside of the surrender of the assessment policy for the endowment certificate, the return of the endowment certificate to the company, and the return of the assessment policy to the appellee, the right to such rescission must be established by clear and convincing evidence. Turner-Elkhorn Coal Co. v. Smith, 247 Ky. 112, 56 S. W. (2d) 545; Perry v. Thomas, 232 Ky. 781, 24 S. W. (2d) 603.

As said in the case of Atlantic Delaine Co. v. James, 94 U. S. 207, 214, 24 L. Ed. 112:

"Cancelling an executed contract is an exertion of the most extraordinary power of a court of equity. The power ought not to be exercised except in a clear case, and never for an alleged fraud, unless the fraud be made clearly to appear; never for alleged false representations, unless their falsity is certainly proved, and unless the complainant has been deceived and injured by them."

Measured by this rule, the proof in this case falls far short of its requirement. It is patent that the witnesses who claimed they heard English tell Wilkerson that his next assessment would be $165 were mistaken in their understanding that this amount referred to the next assessment, rather than to the premium which would be payable on the $2,000 policy which Wilkerson was discussing taking out. No one denies that Wilkerson did contemplate taking out a $2,000 policy and, as we have seen, the premium on that policy payable as Wilkerson proposed to pay it would have come to $165.92. The agent admits that he did tell Wilkerson that as the

years went on his assessment would materially increase. Of the truth of this, there can be no doubt. It is not denied that the company had ceased to write insurance on the assessment plan, from which it inevitably follows that as the members of that class died off, no new ones being added, the assessments would have to increase materially and if Wilkerson lived long enough, it was inevitable that his burden would become one very onerous to bear. Even though the assessment did not advance in the following October, it was only the fortuitous circumstance of Wilkerson's death the following March that would have rendered his staying in the assessment class profitable had he elected to do so. But of course Wilkerson was not in June, 1930, contemplating an early death. Except as to the figure of $165, there was nothing these witnesses say that English told Wilkerson which was materially untrue. It was probable that the assessments might advance the following October, but of course as to that no one could definitely say until the losses were finally determined. And so the agent's statement as to the fact that the assessments would advance in the following October was, at the best or worst, as you take it, obviously only his judgment in the matter. Conceding arguendo that Wilkerson might likewise have been as mistaken as his witnesses were with reference to this $165 being applicable to the next assessment rather than to the premium on the $2,000 proposed policy, this is a far cry from fraud. The petition does not rely on a mutual mistake but on fraud and, to sustain that proposition, it must be shown that a false statement was made with the intent of having the other party rely upon it and that the other party did rely upon it to his harm. There is no clear or convincing proof here of any fraud as to this matter of the advancing of the assessment.

As to the representation concerning the time of payment of the endowment certificate, the application which Wilkerson signed plainly showed that the certificate was not to be payable until 1944 and then only if he were then alive. The certificate which he received after the surrender of his assessment policy likewise so provided. Wilkerson kept this certificate until his death and made no effort to question it. From this it may fairly be concluded either that he did not surrender his assessment policy in reliance on the alleged representation that this certificate was to be payable to his estate even if he died

before 1944, conceding that such representation was made, or that after the reception of that certificate he decided that he would let the matter stand motivated by the knowledge, which was true, that the longer he kept his assessment policy and the longer he lived the more onerous would the burden inevitably be upon him. Of course, had Wilkerson known in June that he would die in the following March, the exchange he made would have been a foolish one to make, but Wilkerson in June did not know this and, no doubt, as all mortals, contemplated a long stretch of life before him, for which reason he entered into the arrangements he did.

In Head v. Oglesby, 175 Ky. 613, 194 S. W. 793, 795, we quoted with approval the following from Central Life Ins. Co. v. Taylor, 164 Ky. 844, 176 S. W. 373:

> "Where one sues in equity to obtain the rescission of a contract, basing his claim to the relief sought upon the ground of fraud inducing the execution of the contract, he must act promptly in making his election of remedies; for, if he fails to act promptly upon the discovery of the fraud, he loses his right to rescission in equity, and his only remedy then is an action for damages for the deceit. Culton v. Asher, 149 Ky. 659, 149 S. W. 946; Buford v. Brown, 6 B. Mon. 553."

As stated, no effort was made by Wilkerson to set aside this transaction after he received his certificate in June. He was charged with the knowledge of its contents. Connecticut Fire Ins. Co. v. Roberts, 226 Ky. 534, 11 S. W. (2d) 148. It was his duty, if he wished to rescind the transaction, to act promptly. This he did not do. It follows that the proof falling short of that necessary under the rules to sustain this action of rescission for fraud, the lower court should have dismissed the petition and for its failure to do so the judgment is erroneous.

The judgment is therefore reversed, with instructions to dismiss the petition.

Whole court sitting, except Justice Thomas, who was absent.